No. 1,859.

J. M. GRISBY, RESPONDENT, *v.* THE CLEAR LAKE WATER WORKS
COMPANY, APPELLANT.

NUISANCE.—JURISDICTION OF COUNTY COURT.—In an action to abate a nuisance
and to recover damages, the County Court has no jurisdiction of the
action for damages, except as an incident to its power to abate the nuisance.

IDEM.—If the nuisance had been abated prior to the commencement of the
action, the County Court has no jurisdiction for any purpose.

EVIDENCE—DECLARATION OF AGENT.—The declarations of any agent are not
admissible in evidence against his principal, until the fact of his agency
is first proven.

PRACTICE ON APPEAL.—STATEMENT MUST SHOW PROOF OF AGENCY.—It will not
be presumed that evidence to establish such agency was given, but the
statement must show that fact.

NUISANCE.—EVIDENCE OF EXPERTS.—In an action to abate a nuisance caused
by the erection of a dam, and the consequent overflow of land by back-
water, the evidence of an expert as to the effect of an obstruction in
causing the back-water, is admissible.

EVIDENCE OF EXPERTS.—When an expert is called by one of the parties to
an action, his evidence should be received with great caution by the jury,
and should never be allowed except upon subjects which require unusual
scientific attainments or peculiar skill.

NUISANCE, PUBLIC OR PRIVATE.—DAMAGES.—The plaintiff, in an action for
nuisance, cannot recover damages for injuries which affect the public
generally; but if he has suffered damages peculiar to himself, it becomes,
to that extent, a private nuisance for which he may recover.

PRESCRIPTION, RIGHT TO OVERFLOW LAND.—To acquire a prescriptive right
to overflow the lands of another, there must have been an uninterrupted
enjoyment, under claim of right, for a period of five years; there must
have been an actual occupation by the flow of water, to the knowledge
of the owner, and such as to occasion damage and give him a right of
action; and there must have been such a use of the premises and such
damage, as will raise a presumption that the owner would not have sub-
mitted to it unless the other party had acquired a right so to use it.

NUISANCE.—CONTINUANCE OF, NOTICE.—A party who continues a nuisance but
is not the original creator of it, is entitled to notice that it is a nuisance,
and a request must be made, that it may be abated, before an action will
lie for that purpose, unless it appear that he had knowledge of its hurtful
character; where the extent of the nuisance is increased by such party, the
rule is otherwise.

IDEM.—EVIDENCE.—Evidence tending to show that the nuisance was pro-
duced by natural cause, is admissible.

APPEAL from the County Court of Lake County.

On the trial the plaintiff proved that there were two dams
erected in Cache Creek under the personal direction of one

Orrin Simmons, that the lower one was a permanent structure across the stream with projecting timbers with grooves into which planks could be and were frequently slipped so as to raise the water above the permanent and immovable structure, and was higher than the one upon the site of which it was built, and which it was intended to replace; that the other dam was a structure of timber, brush and dirt, intended to stop the water while the lower and main dam was in process of construction.

In order to prove that the defendants built the dams, or caused them to be built, plaintiff was permitted, against the objection of defendants, to introduce certain declarations of Simmons, made while superintending the work of erecting the dams. Plaintiff claimed that Simmons acted in the capacity of agent for defendants, but aside from the declarations of Simmons, the statement does not show any evidence of such agency.

Defendants gave evidence tending to show that the lower dam was built upon the site of one erected eight years before, that the new dam was of the same height and capacity as the old one; that it was built as soon as it could be after the removal of the other; that the defendants and those under whom they claim and from whom they derive title, had been in possession and use of said dams from the time of the construction of the first; that the overflow complained of was occasioned by the large amount of water which had fallen in the years 1865–6–7; that near Clear Lake were several small lakes among the hills, without outlets, and offered to show that these lakes and other receptacles for water in the immediate vicinity of Clear Lake in the winter of 1866–7, and in the summer following, had three or four times the depth of water of ordinary seasons, and by this to show what effect was produced upon the quantity of water in Clear Lake by the rain of that winter.

Defendants also offered to show by the testimony of Calvin Brown, a civil engineer, that the dams complained of would not occasion the alleged injury, but on the objection of plaintiff the testimony was excluded.

The defendants requested the Court to charge the jury:
"If the jury find that the old dam built in 1853, was a nuisance, and that the present dam is substantially equivalent
to the old, and that defendants have succeeded to the title
of those who built the old dam, then the plaintiff cannot
recover, without first showing a request to the defendants,
before the action, to remove the dam complained of; provided that such erection has been maintained with only such
reasonable disuse as was rendered necessary to repair or
replace the structure." The Court refused so to charge, to
which refusal defendant duly excepted.

The cause was tried by a jury, who rendered a verdict
that, "We, the jury, find for plaintiff, and three feet of the
top of said dam a nuisance, and damages fifteen hundred
dollars.

The other facts are stated in the opinion.

*J. McM. Shafter,* for Appellant.

*First.*—1st. A nuisance which has been abated by the party
creating, is not the subject of an action for any purpose in
the County Court; in other words, as to an abated nuisance,
that Court has no original jurisdiction. (Constitution, Art.
VI., Sec. 8; Stats. 1863, p. 336-7; Practice Act, Sec. 240).

That this is an action in equity, in which the destruction
of an existing nuisance is the very object, and that damages
are merely incidental and dependent upon such judgment of
abatement are propositions beyond controversy in this
State. (*Hudson* v. *Doyle,* 6 Cal. 101; *Bear River and Auburn
W. M. Co.* v. *Boles,* 24 Id. 354; *People ex rel. Blood* v. *Moore,*
29 Id. 427; *Courtwright* v. *B. R. & A. W. & M. Co.,* 30 Id.
573; *Blood* v. *Light,* 31 Id. 115; *Miss. & Miso. R. R. Co.* v.
*Ward,* 2 Black. 485.)

The difference between a proceeding to abate a nuisance
and an action for damages is stated in *Cornes* v. *Harris,*
(7 Comst. R. 223.)

2d. As the injury was alleged to have been occasioned
by the joint effect of the two dams, no recovery could be
had, at least as to damages, in the action. The averment

is not divisible, as the case as to the mere number and quantity. It is one where the result is attributed to two causes, acting in aid of each other—interdependent and commingled in influence and effect—and where from the statement, as in the nature of the causes themselves, it is impossible to meet the charge by preparing or making defense as to either cause separately. By their verdict, the jury found that *one* dam only was in fact a nuisance. After having had the question of nuisance or no nuisance submitted them, they fail to pass upon the *whole issue*, and leave it entirely uncertain as to which dam, or whether to a portion of the solid structure, or to the splash-boards their verdict applies. That this is erroneous, see *Kent* v. *McNeal*, (1 Denio, 436.)

*Second*—The Court erred in admitting evidence "that water standing on the ground, and not receding until hot weather comes, produces a fetid atmosphere, unhealthy to the community residing about the lake." The category contemplated by the testimony, the recession of the waters was denied by the complaint, and was for that reason inadmissible. The fact of overflow alone constituted the dams a nuisance, if they caused such overflow. There was no averment showing special damage to plaintiff or his family on account of sickness. The attempt was to show that this was a common nuisance, a fact which standing alone would have been fatal to plaintiff's recovery. The fetid character of the atmosphere was, as to plaintiff, at best indifferent, unless *he* had been specially injured by it.

*Third*—There was error in submitting the question to the jury, whether these defendants constructed these dams, there being no evidence to that effect. The statement, or admission of a mere corporation, is not evidence as against the corporation. *(Shay* v. *Tuolumne W. Co.* 6 Cal. 74.)

The statement of a person while engaged in the discharge of an agency, must be preceded by proof of such agency. Here there was no such evidence, but the contrary. *(Garfield* v. *Knight's Ferry W. Co.* 14 Cal. 37.)

*Fourth*—The plaintiff was permitted to prove that "splash-boards" were arranged so that they could be, and sometimes

were used, to raise the water above the permanent and immovable structure; that these "splash-boards" were "above the lower dam." It is evident from this language that the "splash-boards" were not treated as part of the dam. Nor were they so regarded in the judgment, when the word "structure" is used.

The complaint is for erecting a "dam." In addition, therefore, plaintiff was allowed to prove the existence of these "splashboards" and complained that their "possible or intended use increased the character of the nuisance." That such threatened erection might have been prevented by action, is admitted; but, to sustain an action to abate a nuisance, one must first exist.

*Fifth*—Defendants offer of proof as to the quantity of water in lakes adjacent to Clear Lake was erroneously rejected. The defendants made the point that the amount of water which fell in the winter of 1866–7 was so large that Clear Lake was raised to an extraordinary height; and, that the outlet of the lake remaining the same, the waters were retained a much longer time than ordinary. The offer was to show "that several small lakes and other receptacles for water," were higher in 1866 and 1867 than formerly. That these lakes, lying near by, both being depressions in the earth's service into which rain fell and water flowed or percolated, are so far similar as to lead a reasonable man to infer that rain and storms which raised one to three or four times its ordinary height, would affect the other in the same manner, and to the same extent, is a proposition self-evident.

*Sixth*—The rejection of the professional opinion of Calvin Brown was error. *Cuilibet in sua arte perito est credendum*, says Brown's Legal Maxims, (p. 572.) "On questions of skill and judgment, men of science and experience are allowed to give their opinions in evidence." (*Lincoln v. Saratoga and Sche. R. R. Co.*, 23 Wend. 425, *per cur;* 1 Phillip's Ev. 654, * 778; *Folks v. Chadd*, 3 Doug. 157; *Hastings v. Steamer Uncle Sam*, 10 Cal. 341.)

Indeed, the principle asserted by us has been extended greatly beyond our claims. (*Porter v. Pequonnoc Manufac-*

*turing Co.*, 17 Conn. 249; *Cottrill* v. *Myrick*, 12 Maine 222.) In *Enright* v. *S. F. & S. J. R. R. Co.*, (33 Cal. 230), the Court rejected the opinion of a witness, because "the point was not one of science, nor of peculiar or educated skill." See *Blood* v. *Light*, (31 Cal. 115), as to who are experts.

*Seventh*—The refusal of the Court to charge that defendants were entitled to notice if they merely continued an old nuisance was error. (2 Hilliard on Torts, 92–143; *Snow* v. *Cowles*, 2 Foster, 296; *Woodward* v. *Tufts*, 9 N. Y. 88; *Pittsburg* v. *Moore*, 44 Maine, 156; Angel on Watercourses, 403.)

*Eighth*—The defendants had acquired a prescriptive right to maintain the dam at the height of that originally built. (2 Hilliard on Torts, 135, *ex post*.)

That the change in the structure, with no unreasonable delay in making it, does not affect this right, is affirmed by the same authority. (Washburn on Easement, 66-70.)

*Wallace & Pendegast*, for Respondent.

Appellant makes one fundamental error which seems to run through his whole argument. It is this: He confounds the cause of the nuisance with the nuisance itself.

Respondent does not claim that the dam itself, aside from the effect it has upon the water of the lake, is a nuisance; but the overflow of the water is the nuisance, and the dam or dams the cause, and the defendant the author. The Court is asked to remove the cause, and the effect will cease and incidentally pay the plaintiff by way of damages and costs. Whether the cause is one dam, two, or fifty, is immaterial. There may have been a slight variance in the pleading in describing the cause, but no such variance as affects the substantial rights of the parties. *(Castro* v. *Wetmore*, 16 Cal. 380; 2 Phil. on Ev. p. 2.)

In regard to informality in the verdict, the Court in *Treadwell* v. *Wells et al.* (4 Cal. 263), says: "We are not disposed to consider the objection taken to the form of the verdict, and the judgment entered thereon, inasmuch as it was received and recorded by the consent of the plaintiffs." In that case the plaintiffs were the appellants. In the case at

bar, the defendant made no objection to the form of the verdict, and it is too late to do so on appeal. If the defendant had felt that it was material for the jury to say which dam, he would have found that they meant both, and the words "said dam," would have been changed to "said dams." That was an informality the defendant's counsel did not wish to correct. The error complained of is only formal and clerical.

The Court may direct a special verdict to be entered in the action. *(Burritt* v. *Gibson,* 3 Cal. 396.) A general verdict will conclude all parties who do not answer separately, or demand separate verdicts. *(Winans et al.* v. *Christy et al.,* 4 Cal. 70; *Anderson* v. *Parker,* 6 Id. 197.)

*Second.*—Appellant's second point is not well taken, as is shown by reference to *Gunter* v. *Geary,* (1 Cal. 466–7.) This is an able opinion by Judge Burnett, and covers the point taken by appellant, and with an exhaustive argument and numerous authorities, leaves the appellent not a place to stand.

*Thomas B. Bond,* also for Respondent.

*First* —Defendants are precluded by their answer from denying that they built, maintained and used the dam in question (which was the main dam), as averred in the complaint, and that plaintiff did have at one time a cause of action. This case is somewhat different, we think, from *Bell* v. *Brown,* (22 Cal. 671); *Racouillat* v. *Rene,* (32 Id. 450); *Siter* v. *Jewett,* (34 Id. 92.)

Defendants gave evidence tending to show " that they had been in possession and use of said dams." "Every continuance of a nuisance is in judgment of law a fresh nuisance." (3 Blackstone, 220; *Vedder* v. *Vedder,* 1 Denio 227.)

At common law the writ of "nuisance lies only against the party who erected the nuisance, and if it be continued by his alienee against both. *(Brown* v. *Woodworth,* 5 Black. 550.)

The successor of the title and possession of property, who omits to abate a nuisance erected thereon by another

who had notice to abate, is liable for the damage caused by its continuance, and it seems that notice to him to abate it is not necessary. *(Brown* v. *Cayuga and Susquehanna R. R. Co.,* 12 N. Y.; 2 Kern. 486.)

*Second*—No length of time in the possession of the property could give the defendants the right to build the new dam higher than the old one, or otherwise alter or change the structure so as to increase the nuisance. *(Russell* v. *Scott,* 9 Cowen, 279; *Stites* v. *Hooker,* 7 Id. 266; 3 Kent, 447.)

Though the old dam or the new one might have been used for a great number of years, in such a way as not to injure the plaintiff, it would not deprive plaintiff of his right of action, when either should be used so as to injure him. In fact, plaintiff could not bring his action to abate the dams until they had injured him. No length of time will legalize a public nuisance, and the reason assigned for it is, that while the nuisance continues a mere trifle no one thinks of taking measures to have it removed. (7 East. 199; *Dygent* v. *Schenck,* 3 Douglas, 340–43.)

*Third*—Conceding that the two dams constituted but one nuisance, it does not follow that the main dam would not be a nuisance standing alone; the removal of the temporary dam would only be a removal of a part of the nuisance.

Although a part of a nuisance may be removed, if the remainder constitutes a nuisance, the abatement of what remains, together with all the damages occasioned by the whole nuisance, is an entire cause of action, and the Court to which jurisdiction of abatement attaches has jurisdiction of the whole subject matter. The plaintiff could not be allowed in such a case to split his cause of action by bringing one action to abate that which remains and for damages caused by it, and another separate action for the damages caused by that part of the nuisance that was removed. *(Nightingale* v. *Scannell,* 6 Cal. 509; *Farrington* v. *Payne,* 15 Johns. 432; *Van Zandt* v. *Mayor,* 8 Bosw. 375.) It is a rule of Courts of equity, that "the jurisdiction having once rightfully attached, it shall be made effectual for the

purposes of complete relief" in order to prevent a multiplicity of suits. (2 Story's Equity, Sec. 64. K.)

*Fourth*—Section 240 of the Practice Act gives the right of action to "any person whose property is injuriously affected, or whose personal enjoyment is lessened by the nuisance." (*Blanc* v. *Klumpe*, 29 Cal. 157.)

TEMPLE, J., delivered the opinion of the Court, WALLACE, J., and CROCKETT, J., concurring:

This action is brought in the County Court to abate a nuisance and recover damages. The complaint charges the defendant with having erected two dams across Cache Creek, which is the outlet of Clear Lake; that the two dams have caused the overflow of at least five hundred and fifty acres of plaintiff's land, and thus rendered it valueless; and that the waters, becoming stagnant, have rendered the dwelling-house of the plaintiff uninhabitable.

The answer contains a general denial and a plea of the Statute of Limitations. The plaintiff had judgment, and the defendant's motion for a new trial having been denied, this appeal is taken.

Upon the trial evidence was introduced by the defendant tending to prove that one of the dams described in the complaint, had been removed before the action was commenced. The defendant thereupon asked the Court to instruct the jury that if they found that either of the dams was removed before the action was commenced, the plaintiff could recover no damages occasioned by such dam. The Court refused to give this instruction, and the ruling is assigned as error.

We think this point well taken. The County Court has no jurisdiction of the action for damages, except as an incident to its power to abate the nuisance; and in case it should appear that the nuisance had been abated prior to the commencement of the action, it would follow as a matter of course that this Court has no jurisdiction for any purpose.

We think, also, that there was error in admitting evi-

dence of the declarations of Simmons for the purpose of showing that the dams were built by the defendant. The very purpose of the evidence seems to have been to prove that he was building the dams for the defendant, and his declarations could not be evidence against the defendant until his agency was first proven. It was necessary to show the very fact sought to be established by the proof before this evidence would be admissible. We fail to find any evidence aside from these declarations of Simmons himself of his agency. We cannot presume that such evidence was given, though not in the statement. The objection to the testimony is clearly made, and if the proper foundation for its admission was laid, it was the duty of the respondent to see that the statement should show that fact. This is the chief purpose of the requirement that the statement shall contain the specification of error.

The testimony of Brown as an expert ought to have been admitted. No objection was made to his competency, and nothing is better established than the proposition that this kind of evidence is admissible as to the effect of obstructions in causing back water. Ordinarily, it is true, witnesses testify only as to facts, leaving it to the jury to draw their conclusions, but upon matters of science and questions requiring peculiar skill an exception is made. These witnesses ought, perhaps, to be selected by the Court, and should be impartial as well as learned and skillful. A contrary practice, however, is now probably too well established to allow the more salutary rule to be enforced, but it must be painfully evident to every practitioner that these witnesses are generally but adroit advocates of the theory upon which the party calling them relies, rather than impartial experts, upon whose superior judgment and learning the jury can safely rely. Even men of the highest character and integrity are apt to be prejudiced in favor of the party by whom they are employed. And, as a matter of course, no expert is called until the party calling him is assured that his opinion will be favorable. Such evidence should be received with great caution by the jury, and

never allowed, except upon subjects which require unusual scientific attainments or peculiar skill.

On the trial the plaintiff was allowed to prove by a medical witness, against the objection of defendant, that water standing upon the grounds until the hot weather comes produces a fetid atmosphere and miasma, which renders it unhealthy to the community residing about the lake. We do not understand the object of the evidence to have been to prove damages to the plaintiff by showing an injury to the community, but to show the character of the nuisance occasioned by causing the water to flow back over the land of plaintiff. Testimony was introduced tending to prove that the waters were backed up within a few feet of the plaintiff's house, and it was claimed that the house was thereby rendered uninhabitable. Of course the plaintiff cannot recover damages for a public nuisance, so far as the injury is to the public only, but if he has suffered damage peculiar to himself, as by flooding his land, and thereby depriving him of the use of it, the nuisance is to that extent a private nuisance as to him, for which he may recover damages, and we have no doubt that the facts alleged in the complaint, if proven, are sufficient to enable the plaintiff to maintain this action in that respect. (*Blanc* v. *Klumpke*, 29 Cal. 157.)

We do not think the evidence even tends to establish a prescriptive right in the defendant to overflow the lands of the plaintiff. To acquire this right, there must have been an uninterrupted enjoyment, under claim of right, for the period of five years. There must have been an actual occupation by the flow of water, to the knowledge of the plaintiff, and such as to occasion damage and give him a right of action. There must have been such a use of the premises, and such damage, as will raise a presumption that plaintiff would not have submitted to it, unless the defendants had acquired a right so to use it. Such a state of facts is not likely to be found where the actual issue tried is, whether the defendant has caused the lands to be overflowed or not. (*Gleason* v. *Tuttle*, 46 Maine, 289; *Felton* v. *Simpson*, 11 Ind. 84; *Parker* v. *Hotchkiss*, 25 Conn. 321.)

The rule seems to be well established that a party who is not the original creator of a nuisance is entitled to notice that it is a nuisance, and a request must be made, that it may be abated before an action will lie for that purpose, unless it appear that he had knowledge of the hurtful character of the erection. This rule is not inconsistent with the authorities cited by plaintiff's counsel, that every continuance of a nuisance is a new nuisance, but it is adopted for the reason that it would be a great hardship to hold a party responsible for consequences of which he may be ignorant. If, therefore, the defendant became the purchaser of the premises after the dam had been erected, or if he replaced the old dam by a new structure—there being no greater interval between the removal of the old and the erection of the new than was necessary to do the work —and the new structure does not cause the land of the plaintiff to be overflowed to a greater extent than the old one did, then the defendant was entitled to notice before he could be made liable to an action for damages. If, however, the new structure caused the lands of plaintiff to be flowed to a greater extent than the old one, the rule is otherwise.

As to the "*flash-boards,*" we see no reason why they may not be considered a portion of the dam, if they were actually used, and if the overflow of plaintiff's land was occasioned by their use the defendant would be liable, although they were not in use all the time. The question as to whether they were used or not was properly left with the jury, although the evidence only seems to be material as bearing upon the question as to whether the defendant was entitled to notice before the action could be maintained. The damages would depend upon the amount of land flowed whether the backwater was caused by the "*flash-boards*" or by the more permanent part of the dam.

We understand that the counsel for plaintiff finally conceded the right of defendant to show that during the time for which damages are claimed for the overflow of plaintiff's

Points decided.

land, the small lakes near Clear Lake contained an unusual amount of water. To prevent the possibility of a misunderstanding, however, upon the new trial, we remark that such evidence as also that the streams and springs in the neighborhood was unusually flush, was admissible, for, although by no means conclusive, it directly tended to show that the high water in Clear Lake and Cache creek was not caused by the defendant's dam.

As a new trial must be had, we do not deem it essential to discuss the questions raised as to the verdict and judgment.

Order and judgment reversed, and a new trial ordered.

By Rhodes, C. J.: I concur in the judgment.

Sprague, J., expressed no opinion.