[Civ. No. 11372.   First Appellate District, Division Two.—November 28, 1940.]

FRED A. REINHARD, Appellant, v. LAWRENCE WARE-
HOUSE COMPANY (a Corporation) et al., Respondents.

Thomas C. Ryan and George Olshausen for Appellant.

Hadsell, Sweet, Ingalls & Lamb, Myrick & Deering and Scott, James Walter Scott and J. LeRoy Wehr for Respondents.

NOURSE, P. J.—In 1912 one John A. Lennon contracted for the construction of a four-story building at 37 Drumm Street in San Francisco. The building was erected by a contractor under the supervision of an architect. In 1923 Lennon leased the entire building to the Lawrence Warehouse Company for a term of twenty years. In 1924 Lennon died leaving as his only heirs ten children to whom this property descended. In 1926 one of these children conveyed his interest to the others, and, in 1927, the remaining children conveyed the Drumm Street property to the Estate Company, respondent herein. Thereupon the estate was closed, and a decree of final distribution to the company was entered in conformity with the conveyances from the heirs.

On December 20, 1938, the lessee engaged a glazing contractor to make some repairs to a skylight which was maintained in the rear of the building over a private office. Plaintiff, an employee of this contractor, while working on the skylight, fell and was injured. He sued the owner and the lessee for damages caused by their alleged negligence in the maintenance of the skylight. The charging part of his complaint reads: "That on the 20th day of December, 1938, plaintiff was an invitee of the defendants in said building and was engaged in repairing a certain glass skylight maintained by said defendants on said premises; that the defendants carelessly and negligently maintained said skylight

in a dangerous and defective condition in this: that the cross bars of said skylight were not anchored or did not extend into the walls of said building; that said cross bars were not reinforced by rivets in order to prevent the galvanized metal surrounding said bars from buckling; that the defendants failed to have the hip joints of said skylight placed close together in order to render sufficient support to said skylight; that after said skylight was built the defendants carelessly and negligently installed a sprinkling and ventilating system in said building and used said skylight for support of both said sprinkling system and said ventilating system, thus adding greatly to the strain of said skylight; that for many years the iron ribs into which the glass in said skylight was fitted, were rusted and rotten; that as a result of all of said conditions said skylight became so weakened that it was unable to support the weight of plaintiff while working on said skylight and said skylight gave way and fell in and precipitated plaintiff a distance of approximately twenty (20) feet to the floor below.''

At the close of plaintiff's case tending to show that the skylight had been constructed defectively and had since decayed, the trial court granted the motions of both defendants for a directed verdict. On his appeal from the judgment plaintiff seeks to hold the owner on the ground that the faulty construction of the roof was a nuisance; and seeks to hold the lessee on the further ground that it was negligent in failing to observe the dangerous condition of the roof. Before discussing these questions it should be stated that the plaintiff as a witness in his own behalf testified that he had had may years of experience as a glazier, had worked on numerous skylights, was familiar with the various types of construction, had worked on a few of the types used in the Drumm Street building, and that it was impossible to tell whether the beams of this skylight were safely imbedded in the brick without tearing the brick out, or the metal off. In this respect the witness's statement was confirmed by his experts, and no conflicting testimony was given. The trial court was thus confronted with the undisputed evidence that plaintiff's injuries resulted from a condition of the building which was unknown to both landlord and tenant, and could not have been discovered through ordinary or usual inspection or care.

■■ The directed verdict in favor of the landlord is sound for many reasons, but we will mention but a few.

In his complaint the plaintiff clearly and simply pleaded a cause of action for negligence in the maintenance of the skylight. He did not plead a nuisance, public or private. If any of his evidence tended to prove a nuisance he did not rely upon it as such and did not so inform the trial court. The motion for a directed verdict was made upon the case then before the trial court, based upon the pleadings and the proof. It is not a question of variance. It is a simple question whether the evidence proves the case which plaintiff tendered to the trial court. On this appeal the only question is whether the trial court erred. We cannot try the case or the issue *de novo*. ■ Since the plaintiff did not tender the issue to the trial court which he now argues for the first time on appeal, there was no error in that court in reference to that issue which can be reviewed here.

■ Aside from the question of pleading, the evidence failed to prove a nuisance, either public or private. It is said in 46 C. J., page 646: "A nuisance is common or public where it affects the rights enjoyed by citizens as part of the public, that is, the rights to which every citizen is entitled. A private nuisance is one that affects a single individual or a determinate number of persons in the enjoyment of some private right not common to the public." Appellant proved that the skylight was over a portion of the business office of the warehouse company. There was no evidence that anyone worked under it, or that any of the public entered these offices. There was no evidence that any customers entered the office, or that anyone other than the employees and invitees of the firm were at any time in proximity to the skylight. There was no evidence that these offices were at any time open to the public. Hence, none of the elements necessary to establish a public nuisance are present.

■ But the appellant argues that the skylight might have been a private nuisance and that the owner should be held though free from negligence. The argument is not sound. Appellant pleaded that he was an invitee of the defendants for the purpose of repairing the skylight. He proved that he was the invitee of the lessee only. As to the owner he was as a trespasser. ■ The rule is settled in this state that the owner or occupant of premises only owes due or ordinary care to an invitee, and is not an insurer. (*Mautino* v. *Sutter Hosp. Assn.*, 211 Cal. 556, 560 [296 Pac. 76].)

■ This doctrine is a simple corollary of the well accepted rule that knowledge is the basis upon which the liability to an invitee rests. In 20 Ruling Case Law, page 57, it is said: "The true ground of liability is the proprietor's superior knowledge of the perilous instrumentality and the danger therefrom to persons going upon the property. It is when the perilous instrumentality is known to the owner or occupant and not known to the person injured that a recovery is permitted. . . . And, hence, there is no liability for injuries from dangers that are obvious, or as well known to the person injured as to the owner or occupant." ■ And there is no dispute in the authorities that one who was not the creator of a nuisance must have notice or knowledge of it before he can be held. (*Grigsby* v. *Clear Lake Water Works Co.*, 40 Cal. 396, 407; *Edwards* v. *Atchison, T. & S. F. R. Co.*, 15 Fed. (2d) 37, 38.) The same principle is clearly stated in 46 C. J., page 742, as follows: "It is a prerequisite to impose liability against a person who merely passively continues a nuisance created by another that he should have notice of the fact that he is maintaining a nuisance and be requested to remove or abate it, or at least that he should have knowledge of the existence of the nuisance."

■ To escape this rule appellant argues that the respondent Lennon Estate Co. having taken direct from the deceased must be deemed the "creator" of the alleged nuisance. The argument is faulty because based upon a wholly false premise. ■ The heirs of Lennon succeeded to the property immediately upon his demise. (Sec. 300, Prob. Code; *Johns* v. *Scobie*, 12 Cal. (2d) 618, 623 [86 Pac. (2d) 820, 121 A. L. R. 1404].) While the title rested in them they conveyed to the corporation. There was no privity between the corporation and the deceased; no organization calling for the application of the *"alter ego"* doctrine. The decree of distribution, made after the conveyance, merely confirmed the title in the corporation. This was not a transfer of title from the deceased to the corporation, that title was transferred from the deceased to the heirs by operation of law. (*Schade* v. *Stewart*, 205 Cal. 658, 660 [272 Pac. 567].)

■ The sound principle that one who has not created a nuisance must be shown to have knowledge of its existence before he can be held finds expression in section 3483 of the Civil Code which reads: "Every successive owner of prop-

erty who neglects to abate a continuing nuisance upon, or in the use of, such property, created by the former owner, is liable therefor in the same manner as the one who first created it." The words "neglect" and "omit" are not synonymous. The former imports intent and intent presupposes knowledge.

■ The creator of a nuisance is presumed to have knowledge of his own acts. But there is no presumption that the successor to the title to realty has knowledge of the acts of his predecessor in interest. The only conclusion possible under the authorities is that the Lennon heirs, having succeeded to the title by operation of law, transferred to the corporation without knowledge of the alleged nuisance, and the corporation took without notice, or, to be more precise, the appellant made no effort to prove knowledge in any of these parties and rests his case on the argument that such proof was not necessary, though the undisputed evidence is that the existence of the alleged nuisance was not discovered until some twenty-six years after the building was constructed.

■ For the same reason that a landlord cannot be held in damages for a nuisance of which he had no knowledge, he cannot be held for negligence because of a hidden defect in the premises, of which he had no knowledge. (*Ayres* v. *Wright,* 103 Cal. App. 610, 618, 619 [284 Pac. 1077] ; *Ellis* v. *McNeese,* 109 Cal. App. 667, 670 [293 Pac. 854].) And it is stated plainly in the latter case that, "It is not sufficient to show that by the exercise of reasonable care the landlord could have discovered the defective condition, but in order to hold him liable it must appear that he knew of such defect."

■ Here the undisputed evidence is that the defective condition of the premises could not have been discovered either by reasonable care or by reasonable inspection. Appellant made this proof in detail to show that the defect was not obvious and that he was free from negligence in not discovering it before the fall. Therein he sought to eliminate the three elements which would have relieved the defendants from legal liability—"actual notice of the danger by the invitee, obvious danger which should have been seen, and danger which might have been seen by reasonable diligence and care." (*Kessler* v. *Cudahy Packing Co.,* 38 Cal. App. (2d) 607, 610 [102 Pac. (2d) 362] ; 20 R. C. L., p. 57.) But, in proving the absence of all these elements as to an expert workman actually on the premises, he at the same time proved the non-liability of the

defendants—that the defect was hidden, not discoverable by reasonable care or reasonable inspection, and that it was presumably unknown to the defendants.

Little further need be said in reference to the appeal from the judgment in favor of the warehouse company. Appellant here rests his argument on a charge of negligence in failing to maintain the roof in a safe condition. He proved no lack of reasonable care on the part of the tenant. The appellant's argument that the defective condition might have been discovered through a reasonable inspection is based wholly upon an incorrect statement of the evidence. On this issue he called four witnesses. It was his theory that the skylight collapsed because the beams, or hip rafters, were not properly imbedded in the brick of the walls and that the hips, or ribs, had rusted and decayed. In his own behalf he testified that for twenty-two years he had been working for the same contractor in the construction and repair of skylights, had worked on some having the same type of construction, and had worked on this particular one several times before the accident. In answer to the question ''Was it possible without tearing the thing down—by that I mean pulling the beams out, pulling the sheet metal off and taking it to pieces—to see whether or not those beams were embedded in the brick in any way?'' he said, ''It would be impossible to tell unless you tore the brick out.'' Appellant's co-worker was called as a witness, and we find these questions and answers given: ''Q. There was nothing to indicate to you as you looked and examined that skylight that there was anything wrong with it that would cause it to let down? A. I didn't see anything. Q. The only way you could see it would be to tear it apart to find out how it was made, isn't that right? A. I would say so, yes.'' An expert engineer was called by appellant and testified as follows: ''Q What would have been necessary to do, what would it have been necessary to do in order to see whether or not that core bar was embedded in the wall of the building? A. It would have been necessary to lift up some flashing that is embedded in the brick work, take out two lights of glass, and split the sheet metal sash bar open so you could see the core bar.'' Another expert, a structural engineer engaged in his profession in San Francisco since 1910, testified that the design of this particular skylight was a usual and customary type. In response to the question ''And look-

ing at such a skylight, without tearing it apart to see how the lateral support was or to see the size of those hip rafters, or digging it out to see how far the end was embedded in the wall, without doing that you could not in any way tell that that skylight was unsafe, could you?" he answered, "No, I don't think you could."

Upon this state of the record counsel for appellant states the question involved as to the tenant's liability should be limited by the consideration "that witnesses testified they did not 'think' its condition could be ascertained without digging out the roof." A more careful examination of the undisputed evidence would have relieved all parties from a useless discussion of a question which is not an issue here since that evidence discloses that no reasonable or ordinary inspection would have enabled the tenant to discover the defective condition. Upon his own evidence the appellant has shown that the tenant exercised all the ordinary and reasonable care required of any reasonable person under the same circumstances, and failed to make any proof of facts from which the jury could have inferred negligence.

The judgment is affirmed.

Sturtevant, J., and Spence, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 27, 1941. Carter, J., and Traynor, J., voted for a hearing.