# Jefferson, Admrx., et al., Appellants, *v.* Young Men's Christian Association.

564

Argued May 28, 1946. Before Maxey, C. J., Drew, Linn, Stern, Patterson, Stearne and Jones, JJ.

*Samuel Kagle,* with him *Albert H. Pearce* and *Reilly & Pearce,* for appellants.

*D. Malcolm Hodge,* with him *E. P. Balderston, Jr.,* and *Hodge, Hodge & Balderston,* for appellee.

Opinion by Mr. Chief Justice Maxey, June 25, 1946:

This is an appeal from the refusal of the court below to take off a compulsory non-suit in an action of trespass. The plaintiff as administratrix of the estate of her deceased son, brought this action for damages for the latter's death resulting from the alleged negligence on the part of the defendant, the Young Men's Christian

Association of Chester, Pa., Vernon T. Jefferson, then aged thirty-four years, at 12:50 A.M., March 27th, 1943, rented a cot for the night on the second floor of the Y.M.C.A. building in Chester, which is used in part as a lodging house. Jefferson asked the clerk for a "hot bath before he went to bed". He was told that there were no "bath tubs but he could have a hot shower or a warm shower". He was given a towel and a cake of soap and told "to go down stairs and there is a hallway and follow it to the end of the hallway and there is a shower room and he could take a shower there". The clerk said nothing to him about a locker room or a swimming pool. The showers are located in the basement of the building, separate from the room where the swimming pool is located. The pool is 20 ft. by 40 ft. and varies in depth from $3\frac{1}{2}$ ft. to $8\frac{1}{2}$ ft. The room where the pool is located was well lighted and the floors were dry. The location of the rooms in the basement are described as follows: "As one descends the stairway from the lobby to the basement, he arrives at a hall which runs west under the pavement of Seventh Street, the hall is walled on both sides, and at the end of the hall is a room with no door, containing two showers, a wash basin, a chair, and hooks for clothing. The weight-lifting room, the swimming pool and the locker room are situated north of the wall. There is a door between the hall and the weight-lifting room and another door between the hall and the locker room. There are also two doors which lead into the swimming pool, one from the locker room, and one from the weight-lifting room." The shower room was for the use of transients in taking a bath.

When Jefferson engaged a cot and asked for a bath, the desk clerk noted that the former "had the odor of intoxicating liquor on his breath", but he had no difficulty in writing his name and address or in giving the clerk the money for the cot. The clerk said that Jefferson "walked all right".

When the desk clerk, who also served in the capacity of night watchman, went down to the lower floor at 1:15 A.M. he saw Jefferson in the pool "in a standing position about one foot under water and one foot from the edge of the pool, close to the diving board". The watchman then called the night physical director. Jefferson was then "still alive". Artificial respiration was applied but it was unsuccessful and Jefferson was pronounced dead about 45 minutes later. When Jefferson was lifted from the pool, it was found that he was clutching a cake of soap in his hand.

Apparently Jefferson instead of going to the shower room, where he was directed to go, went down the steps and opened the door and went into the locker room and there he undressed and from there he climbed another set of steps and opened the door and went into the room containing the swimming pool.

After trial, the court granted a non-suit on the ground that the plaintiff had established no negligence on the part of the defendant. The court was correct in so holding. That an unguarded swimming pool anywhere presents *possibilities* of danger is evident. If such a pool were situated where infants and young children might fall into it, its creation and existence in that place and in an unguarded condition might well be adjudged negligence, (See *Altenbach et ux. v. Lehigh Valley R.R. Co.*, 349 Pa. 272, 37 A. 429), but the creation and maintenance of a swimming pool in a place and time where only adults have access to it cannot be adjudged negligence. Persons beyond the stage of infancy or early youth are reasonably expected to be self-protecting. Every deep stream of water and every deep pool in the land is a source of danger if persons walk into them blindly. If in the instant case, Jefferson was in such an intoxicated condition that it was obvious to the defendant's agent, i.e. the clerk, that he was not able to realize where he was going and what he was doing, it might have been negligent to have permitted him to go in the

vicinity of the swimming pool, but the evidence of Jefferson's intoxication is of a very meager character. There is no evidence that he was not in possession of his mental faculties. The evidence is to the contrary. The court below correctly says as to Jefferson's condition: ". . . the proof offered by the plaintiff was simply that while decedent had an odor of alcohol on his breath, he walked all right, acted all right, talked politely, was able to register, give his name and address, undress himself, remove his money from his pockets and take them into a safe place alongside the shower in the swimming pool room." The court also correctly states: "An innkeeper is not an insurer of the safety of its patrons, and is only charged with ordinary care, and is only bound to exercise such watchfulness and care as will reasonably secure their safety while guests in the hotel, as for instance, maintaining proper exits to a fire escape." *Ritchey v. Cassons*, 296 Pa. 249; see also *Lyttle v. Denny*, 222 Pa. 395.

There is no evidence in this case that the defendant failed to exercise ordinary care in the arrangement and operation of its lodging house. It was not required to have an attendant or guard at the swimming pool at that time of night. Under the facts of this case, defendant's agent had no reason to anticipate that the decedent would go into the room where the swimming pool was located. Neither was the defendant obliged to keep locked the door between the locker room and the room where the swimming pool was located. No person is required to take extraordinary precautions to save adults in apparent possession of their reasoning faculties from the consequences of their own inattentiveness and carelessness. 20 Ruling Case Law, sec. 101, p. 117, makes this statement: "Everyone has a right to proceed upon the assumption that those to whom he owes a duty of care are normal in every respect and prepared on their part to exercise the care of prudent persons generally."

In appellant's brief of argument appears this correct statement: "There was no eye witness to explain what befell decedent when he entered the swimming pool room." Appellant then argues: (1) that the fact that the decedent held a cake of soap in his hand when he was seen in the pool negatives the inference that he intended to swim in the pool, and (2) that if decedent accidentally fell into the pool, his cries would have been unheard because the guardian of the pool was at some distant part of the building. The contention of plaintiff amounts to this: The failure of the defendant to have a guard at the swimming pool at the time this adult decedent was in the vicinity of the pool amounted to negligence. This contention is supported by neither reason nor authority. The cases cited by appellant are cases where at public resorts persons are invited to use swimming pools and where under certain conditions due care for the patrons requires the presence of guards. In the instant case, the decedent had no right to use the swimming pool and was not invited to do so and the defendant's clerk had no reason to anticipate that the decedent would go so close to the pool as to fall into it. Proprietors of lodging houses and hotels are not expected to anticipate that guests will go to parts of the premises where they are not privileged to go and where there is no need of their going. Restatement of Torts, Vol. II, Sec. 343, lays down this ruling: "A possessor of land is subject to liability for bodily harm caused to business visitors by a natural or artificial condition thereon if, but only if, he knows, or by the exercise of reasonable care could discover, the condition which, if known to him, he should realize as involving an unreasonable risk to them, and has no reason to believe that they will discover the condition or realize the risk involved therein." Comment "b", reads as follows: "Under the rule stated in this Section, a possessor of land is subject to liability to another as a business visitor only for such bodily harm as he sustains while upon a part of the land upon which

the possessor gives the other reason to believe that his presence is permitted or desired because of its connection with the business or affairs of the possessor and which as such is held open to the other as a business visitor."

Since there was no proof of defendant's negligence, it is not necessary to discuss at length the evidence of the decedent's contributory negligence. That he was negligent if he walked into the pool is clear. In *Walker v. Broad and Walnut Corporation,* 320 Pa. 504, 182 A. 643, the facts were that the guest of the hotel who entered the lobby at three o'clock in the morning, slipped and was injured on the lobby floor which at that time was wet and slippery owing to the fact that it was being cleaned. Plaintiff contended that a sign should have been posted, or the premises roped off, or that someone should have been standing guard at the door to warn her of the fact that the floor was being cleaned. On these grounds the trial judge submitted the case to the jury and the jury returned a verdict in the plaintiff's favor and this court held that plaintiff was clearly guilty of contributory negligence as a matter of law and the court should have directed a verdict for defendants. We said: "Plaintiff violated the ordinary duty of care required of all persons to look where they are going. Had she been looking into the lobby as she was coming through the door she could not have failed to see the cleaning man who was busily engaged with his mop and bucket just a few feet inside the entrance. Her view was not obstructed by any other persons thereabout." In the instant case Jefferson should have seen the swimming pool, as the room which contained it was well lighted. On the other hand, if he fell into the pool because of a dizzy spell or because of his intoxication, as plaintiff's counsel contends, there is nothing in this record which put the defendant on notice of the fact that Jefferson might through dizziness or drunkedness fall into the pool. Such being the state of the record, either Jefferson was guilty of contributory

negligence or the defendant was not put on notice that he was likely to fall into the pool through a dizzy spell or drunkedness. In either situation, there was no case for the jury.

The court below was justified in entering the nonsuit and in refusing to take it off. There was no proof of defendant's negligence which measures up to the standard this court established in *Matlack v. Penna. P. & L. Co.*, 312 Pa. 206, 167 A. 37, and in many other cases. In *Rugart et al. v. Keebler-Weyl Baking Co.*, 277 Pa. 408, 413, 121 A. 198 this court said: "In Pennsylvania, liability for negligence depends on the antecedent probability, not the mere possibility, of harmful results therefrom. The general test of liability is whether the injury imputed to the defendant is such that a person of ordinary intelligence would have foreseen it as the natural and probable outcome of his conduct."

When this defendant by its clerk permitted the lodger, Vernon T. Jefferson, to go down stairs to take a shower bath, there was no reason why he (the clerk) should have foreseen as the natural and probable outcome of that permission that Jefferson would get into the swimming pool and drown.

The judgment is affirmed.