## Fucci v. Sommers

*John J. Pentz, Jr.*, for plaintiffs.
*Robinson & Hoffner*, for defendants.

DAVIS, P. J., August 2, 1963.—This is a trespass action by V. James Fucci and Rose Fucci, his wife, against Donald Sommers and Wanda Sommers, his wife, trading as Starlit Lodge, to recover for injuries sustained by each of plaintiffs while they were paying guests at Starlit Lodge, a resort business located in Barrett Township, Monroe County. It appears from the complaint that they occupied a cabin or housekeeping cottage at Starlit Lodge during the week of August 6 through August 12, 1961, "and for a long period of time before and after said week". Mrs. Fucci remained until September 4, 1961, but the complaint is silent as to when Mr. Fucci terminated his stay there. The first count of the complaint avers that the wife-plaintiff sustained a cut thumb when a glass furnished by defendants broke while she was washing it; and the second count avers that the husband-plaintiff sustained a cut or scrape on his right shin bone while proceeding at night from his cabin to the lodge in order to make a phone call. Defendants have filed preliminary objections to the complaint: (a) in the nature of a demurrer, and (b) as a motion for a more specific complaint.

On demurrer, the court is required to determine whether or not the two counts of the complaint set forth valid causes of action. To constitute actionable negligence, a complaint must disclose three essential elements: (1) a duty or obligation of defendant to

protect plaintiff from injury; (2) failure of defendant to discharge that duty; and (3) injury to plaintiff resulting from that failure: McGeehan v. Cicconi, 48 Luz. 127, 130 (1958). The first of these elements has been adequately pleaded in paragraphs 2 to 6 of the complaint, averring the existence of the innkeeper-guest relationship and thereby bringing into operation the relevant law. In Pennsylvania, an innkeeper is not an insurer of the safety of the guest: Jefferson v. Young Men's Christian Association, 354 Pa. 563, 567 (1946); Hunter v. Hotel Sylvania Co., 153 Pa. Superior Ct. 591, 593 (1943); Tamres v. Reed, 109 Pa. Superior Ct. 28, 30 (1933); Moffses v. Paradise Falls Lutheran Association, 16 Monroe 64, 65 (1954); but he is required to exercise such watchfulness and care as would reasonably secure the safety of the guest during his stay at the hotel: Ritchey v. Cassone, 296 Pa. 249, 255 (1929); Tomko v. Feldman, 128 Pa. Superior Ct. 429, 434 (1937); and to provide safe premises and necessary articles of furniture which may be used by the guest without danger: Lyttle v. Denny, 222 Pa. 395, 398 (1909); Cross v. Laboda, 190 Pa. Superior Ct. 119, 121-22 (1959); Manchester v. Barnett, 27 D. & C. 75, 77-78 (1936).

Passing to the second essential element, it will be necessary to deal with the two counts separately.

### First Count

"6. On or about August 7, 1961 the Plaintiff, Rose Fucci, while washing dishes including glasses supplied by the Defendants to the Plaintiffs as guests in one of the cabins of the Defendants, one of the glasses she was washing broke and cut her left thumb which cut went through to the bone and was approximately one and one-half inches long".

This, without more, is an insufficient averment of negligence. In Flagiello v. Crilly, 409 Pa. 389 (1963),

the Supreme Court affirmed a judgment of nonsuit, and Bell, C. J., said:

"The mere happening of an accident or the mere fact that a moving vehicle collides with a pedestrian or with another vehicle does not establish negligence nor raise an inference or a presumption of negligence nor make out a prima facie case of negligence. . . ."

To warrant a conclusion that defendants were negligent, plaintiff relies upon two additional averments: (1) that the glass which broke "was a 'Heinz tomato juice jar', which was intended for the storage of tomato juice, but was not intended or designed for the use as a drinking glass in a household" (paragraph 7); and (2) that defendants failed "to properly inspect the glasses which they supplied to the plaintiffs for use by the plaintiffs as household glasses" (Paragraph 8(a)) or "to test, examine, or otherwise determine whether or not the glasses which they supplied were fit for use as household drinking glasses. . . ." (Paragraph 8(c)).

The first averment is clearly demurrable because it fails to show any causal connection between the breach of duty alleged and the injury sustained: Charnogursky v. Price-Pancoast Coal Company, 249 Pa. 1, 3 (1915); Neagley v. Cassone, 10 D. & C. 632 (1927). Plaintiff was injured because the glass broke while she was washing it; not because she attempted to drink from it. The relevant factor here is fragility. Many glasses specifically designed for drinking are more rather than less fragile than a commercial tomato juice glass, which should withstand the handling associated with its passage through the channels of trade from the bottler to the ultimate purchaser. If defendants had supplied plaintiff with a specially designed drinking glass, the probability that it might break under the circumstances would not be lessened, but possibly might be increased.

The second averment, that defendant failed to inspect or test the glass, will not support a conclusion of negligence unless it can be established that such inspection or testing would have revealed the defect which resulted in plaintiff's injury. An analogous situation was presented in Hunter v. Hotel Sylvania Co., 153 Pa. Superior Ct. 591 (1943). There, a hotel guest sustained injuries to his hand when a porcelain faucet handle, which he was attempting to turn, broke under the pressure. The Superior Court affirmed judgment for defendant n. o. v., and Rhodes, J., (now P. J.), said:

"Defendant had no actual knowledge of any defect in the porcelain handle. The care required of defendant would seem to have been the inspection of the shower in a careful endeavor to discover any defective condition that would cause an injury to a guest. But a failure to make inspection does not create liability unless inspection, if made, would have disclosed the particular defect which made the use harmful".

In a similar case, Trembly v. Capital Co., 89 Cal. App. 2d 1606, 201 P. 2d 398 (1949), the court affirmed a judgment of nonsuit, and Bray, J., said:

"While the defendants were under the duty of making reasonable inspections (Adams v. Dow Hotel, supra [25 Cal. App. 2d 51, 52, 76 P. 2d 210]) there is no evidence in this case to show that such inspections would have discovered whatever condition it was that caused the handle to crumble. As said in Reinhard v. Lawrence Warehouse Co., 41 Cal. App. 2d 741, 107 P. 2d 501, there is no liability on the owner for injuries to an invitee from a hidden defect which could not have been discovered, either by reasonable care or reasonable inspection".

In Licari v. Markotos, 180 N. Y. S. 278 (1920), plaintiff had recovered judgment for injuries sus-

tained when a bottle of straw hat dye manufactured by defendant broke in her hand. On appeal, the judgment was reversed and Wagner, J., said:

"Nor is there any force in respondent's contention, strenuously urged upon this appeal, that the defendant failed in his duty to inspect the bottles before filling them; this for the reason that there is no proof that any examination or inspection would have found the existence of any defect. If such had been the case, it was the plaintiff's duty to give evidence thereof. Bruckel v. Milhau's Son, 116 App. Div. 836, 102 N. Y. Supp. 395. In the absence of such evidence, the learned trial justice had no foundation upon which to predicate any finding of negligence on defendant's part, and a judgment for plaintiff could be based on none other than speculation and pure guesswork".

The same principle was involved in Moffses v. Paradise Falls Lutheran Association, 16 Monroe 64 (1954). The complaint in trespass charged defendants with negligence in failing to provide prompt medical care for the minor plaintiff, stricken with Bell's palsy while attending camp. On preliminary objections, this court held that the complaint did not state a good cause of action, and we said:

"The basic defect in the pleading is in paragraph 7 where it is averred that minor plaintiff suffered an illness on July 19, 1951, without any averment in relation to visible symptoms, or surrounding circumstances which would put defendants on notice that the child was ill and needed special care and attention. The defendants can only be held responsible for what they knew or should have known under the circumstances then existing".

From the foregoing discussion, it is clear that a complete chain of causal relationship between the breaking of the glass on the one hand and the conclusion of negligence on the other cannot be forged with-

out the establishment of three essential elements: (a) that the glass broke because of a defect therein; (b) that the defect was discoverable by reasonable inspection or test; and (c) that defendants failed to make such inspection or test. The complaint lacks any averment of elements (a) and (b); but counsel for plaintiffs seeks to supply the missing links by a process of inference from element (c), expressly averred in the complaint. They urge that the alleged failure of defendants to inspect or test warrants an inference that, if defendants had done so, they would have discovered some defect in the glass. Such an inference would rest on pure speculation. A case based on conjecture is not legally submittable to a jury: Waldron v. Metropolitan Life Insurance Company, 347 Pa. 257, 262 (1943); and a verdict based on guessing will not be permitted to stand: Pascarella v. Kelley, 378 Pa. 18, 21 (1954); Miller v. Montgomery, 397 Pa. 94, 98-99 (1959); and see: Smith v. Bell Telephone Company of Pennsylvania, 397 Pa. 134, 137-39 (1959). To complete the chain of causation, however, it would be necessary to take the inference that there was a defect in the glass as the basis for drawing a further inference that this defect, rather than some independent factor for which defendants were not responsible, caused the glass to break and inflict plaintiff's injury. In Pennsylvania, a jury may be permitted to find an inference upon an inference; but when the inference of the probability of the ultimate fact is based only upon an inference or a chain of inferences, the prior inference must be established to the exclusion of any other reasonable theory, rather than merely by a probability: Waldron v. Metropolitan Life Insurance Company, 347 Pa. 257, 262 (1943); Henderson v. National Drug Company, 343 Pa. 601 (1942); Binkley v. Howard, 50 Berks 201 (1958); and see: New York Life Insurance Company

v. McNeely, 52 Ariz. 181, 79 P. 2d 948 (1938); 1 Wigmore (3d ed.) §41. Since the inference that inspection or testing would have revealed a defect is based on mere conjecture, the entire inferential chain falls with it, and it becomes clear that plaintiff has failed to plead a cause of action. In view of this conclusion, it is unnecessary to discuss separately the motion for a more specific pleading.

## SECOND COUNT

The subject matter of this count transpired in the open and upon the exterior grounds of Starlit Lodge. We think it appropriate to quote the remarks of Siddal, J., concerning the duty of an innkeeper who operates the general type of hostelry (Sunset Lodge, on Green Lake, Maine) with which we are concerned in this case. In Walker v. Weymouth, 154 Me. 138, 145 A. 2d 90 (1958), he said:

"The tourist camp business in this state is a product of the automobile age. It is well known that tourist camp enterprises vary from rough camps constructed on unimproved or wooded land to elaborate camps and camp sites. The grounds of some are allowed to remain in their natural condition. In others, extensive and well-maintained grounds are available for the use of patrons. Some maintain well-kept lawn areas upon which, by the very nature of their upkeep, patrons are invited to travel. In others, grounds in various conditions of improvement are maintained for the use of patrons. The rules of due care are the same in all cases, but the proof required to establish a lack of due care varies with the circumstances of each case".

Any fair assessment of plaintiff's cause of action will require a more ample presesentation of the circumstances than we find in count two of the complaint. Consequently, we shall refrain from consideration of the demurrer and direct our attention to

the motion for a more specific pleading. The complaint avers:

"14. On or about August 9, 1961, during the night, the Plaintiff, V. James Fucci, was required to make an emergency telephone call and was required to travel from the cabin, house or cottage which the Plaintiffs rented, to the main hotel building of the Defendants known as Starlit Lodge, and while traveling from said cottage to the lodge the Plaintiff was caused to strike his right leg on a wall surrounding the swimming pool on Defendants' premises, causing Plaintiff to tear his trousers and scrape and cut his leg.

"15. The Plaintiff was caused to strike his leg and tear his trousers as aforesaid solely due to the negligence of the Defendants which consists of the following: (a) The Defendants failed to provide any light during the night in the area from the cottage where the Plaintiffs resided to said hotel owned by the Defendants. . . ."

The generality of the terminology used makes it impossible for the court to obtain a clear picture of what actually happened. The time element is a relevant matter. The complaint informs us only that it was "during the night". This could be any time between sunset and sunrise. Plaintiff knows when it was, and defendants should be informed of the fact in order to check records, etc., and prepare a possible defense. The time factor could be important in determining whether there was a complete absence of illumination, in view of the  allegation that defendants provided none, or whether there may have been illumination from some other source or agency.

The place element likewise is important. We are not informed as to the location of the part of the wall against which plaintiff struck his leg; nor are we given the relative positions and distances between

plaintiff's cottage, the lodge, the swimming pool and other cottages in the vicinity of the place where the accident occurred.

The manner in which the accident took place is not clearly described. The complaint avers generally that plaintiff was caused to strike his leg while "traveling" from the cottage to the lodge. As we did in Santoianni v. Geaslen, 16 Monroe 66, 67 (1954), we ask again: Did plaintiff "walk or run or crawl. . . .?" Was he following a path, or taking a short cut? Plaintiff should have the opportunity to furnish this information in a more specific pleading.

ORDER

And now, August 1, 1963, the preliminary objections filed to plaintiffs' complaint are sustained, the complaint stricken off and judgment entered for defendants, unless within 20 days, plaintiffs file an amended complaint: (a) setting forth a cause of action under the first count, and (b) setting forth with greater particularity the circumstances averred under the second count.