(116 App. Div. 832)

### BRUCKEL v. J. MILHAU'S SON.

(Supreme Court, Appellate Division, Second Department. January 25, 1907.)

1. NEGLIGENCE — DANGEROUS DEVICE — CARBONIC ACID GAS — LIABILITY OF VENDER.

There being no proof that the process of charging a glass bottle, protected by wicker work, with carbonic acid gas to a pressure of about 200 pounds to the square inch is essentially dangerous, a druggist, selling such bottles and carbonic acid capsules to be discharged therein for aerating liquid, was not liable for injuries caused to a purchaser by the explosion of one of the bottles; there being proof that an apparatus on the same principle had been on the market for a considerable period, that this apparatus had been on sale for several months, that there had been many sales and demonstrations thereof, and no proof of any previous accident in its use, and there being no proof that inspection or examination of the bottle would have made its defect known to a most careful vender, and the buyer having no reason to suppose that the druggist was the manufacturer thereof.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 37, Negligence, § 25.]

2. SAME—ACTIONS—INSTRUCTIONS.

In an action against a druggist for personal injuries caused by the explosion of a glass bottle sold for use in aerating liquids, an instruction that the druggist could not escape liability on the ground of purchase from a reputable manufacturer, if he "could have known" that the bottle was defective for the use for which it was intended, was erroneous, as eliminating the element of due care required of the druggist.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 37, §§ 371–377.]

Appeal from Trial Term, Kings County.

Action by Frederick Henry Bruckel against J. Milhau's Son. From a judgment for plaintiff, defendant appeals. Reversed, and new trial granted.

Argued before WOODWARD, JENKS, HOOKER, RICH, and MILLER, JJ.

Edwin A. Jones (Walter Large, on the brief), for appellant.

Michael J. Tierney, for respondent.

JENKS, J. The question of this case is whether the defendant, as vender of the apparatus consisting of a sparklet bottle and capsules for use therewith, was chargeable with negligence in the sale thereof. The plaintiff complained that the defendant at the time of the sale well knew that the bottle was unsafe and dangerous to use, and unfit for the purpose intended, and that the defendant sold and delivered the bottle without disclosure. But at the end of the case he amended his plea by adding, after the allegation that the defendant "knew," the allegation, "or with reasonable care and diligence ought to have known." There is no allegation or proof of any warranty or representation made by the defendant, so that the case presents a naked sale. It was submitted to the jury on the theory of negligence. The learned court charged without exceptions that there was no direct evidence that the defendant knew anything of the dangers of the article, and that the doctrine of "res ipsa loquitur" did not apply.

On October 31, 1902, the defendant had the apparatus on sale in its drug shop. The plaintiff, who had heard of the article, or at least the name thereof, attracted by the display, bought one of the bottles, with a box of ten capsules, and received printed and illustrated instructions which he had asked for. The user of the bottle was instructed how to discharge from a capsule carbon dioxide, commonly called "carbonic acid gas," into a specified quantity of cold liquid in the bottle, so as to aerate the liquid and thus to make it sparkling and effervescent. The plaintiff at his home, after reading and observing the directions, attempted to aerate milk, but failed. He emptied and washed the bottle and put it aside. Three or four days afterwards he employed the process with water. He inserted the rubber washer and the capsule, gave the cap a little turn, inverted the bottle, screwed the cap home, and shook the bottle. Then he placed it on a table, laid his hand on the bottle, and was about to turn away, when the bottle exploded with considerable force, and a part thereof struck one of his eyes and destroyed it. The cause of the explosion is not definitely ascribed. Whether the bottle was broken, cracked, or impaired, whether any of the attachments were imperfect, whether the capsule was overcharged, does not appear. All that we are told is that the plaintiff used the apparatus in accord with the instructions, and after he had gone through with the process and had put the bottle down it exploded. It appears that the bottle, its attachments, and the capsules were made by the American Sparklets Company, of Bridgeport, Conn., and the bottle as sold and the capsules charged were consigned to the defendant and retailed by it.

Carbonic acid is a gaseous compound of carbon and oxygen, and aerated beverages, like artificial mineral waters, champagne, and beer, are charged with it, and owe their sparkle and effervescence to it. I think that we cannot assume that the sale of an apparatus for such use is the sale of an instrument essentially dangerous, like the belladonna in Thomas v. Winchester, 6 N. Y. 397, 57 Am. Dec. 455, or the nitric acid in Farrant v. Barnes, 2 C. B. N. S. 553. The distinction is made by Hunt, J., in Loop v. Litchfield, 42 N. Y. 351, 359, 1 Am. Rep. 513:

"Poison is a dangerous subject. Gunpowder is the same. A torpedo is a dangerous instrument, as is a spring gun, a loaded rifle, or the like. They are instruments and articles in their nature calculated to do injury to mankind, and generally intended to accomplish that purpose. They are essentially, and in their elements, instruments of danger."

Like the case of the naptha in Wellington v. Downer Kerosene Oil Co., 104 Mass. 64–69, the defendant vender must not be deemed to have known of the danger of this use of carbonic acid gas, if danger there were. On the other hand, there is proof that an apparatus of this principle had been on the market for a considerable period, that this apparatus had been on sale for some months, that there had been many sales and demonstrations thereof, and there is no proof of any previous accident in its use. There was no contention or proof that this particular bottle was peculiarly defective. There is no proof that the process of charging a glass bottle with carbonic acid gas, which generated an initial pressure of about 200 pounds to the square inch, is essentially dangerous. There is no proof that to employ a bottle, if protected with wicker work, is essentially dangerous. The testimony of the plaintiff's expert is that the bottle constructed like the one he had and the sample before him (the broken glass of the exploded bottle) would in his best judgment break under the pressure of gas from the capsule; but there is not a line of testimony which ascribes it to the covering of the bottle, in distinction to any other kind of cover.

In proving the negligence of the defendant in not using reasonable care to discover that the apparatus was unfit for its designated use, the plaintiff cannot rest upon the mere ignorance of the defendant, but must show that the ignorance existed from the absence of due care. Thompson, Com. on Neg. § 829. He cannot ask the jury to speculate, and to guess what the defendant, in the exercise of due care, should have done that would have made it cognizant of the defect. He must indicate to the jury what was the omission of the defendant, to the breach of its obligation to the plaintiff. Shearman & Redfield on Negligence (5th Ed.) § 57, says of the plaintiff in negligence cases:

"He must therefore prove that the defendant has violated some contract or rule of law, thus infringing on the plaintiff's known rights, or else he must prove facts and circumstances from which it can be ascertained with reasonable certainty what particular precaution the defendant ought to have taken but did not take. If the defect was not obvious, there must be some evidence from which it can be inferred how it might and ought to be discovered. He must also prove facts from which it can fairly be inferred that the defendant's negligence was the cause and the proximate cause of the injury. Mere surmise or conjecture on any of these points will not do.'

See, too, Reiss v. N. Y. S. Co., 128 N. Y. 99, 107, 28 N. E. 24; Kilbride v. Carbon D. & M. Co., 201 Pa. 552, 51 Atl. 347, 88 Am. St. Rep. 829.

There is no proof that inspection or examination of the bottle would have made its defect known to the most careful vender or even to an expert in his employ. It does not appear that either one or the other could have ascertained the defect by any test short of those made by the expert witness of the plaintiff. If the fact were otherwise, it was the duty of the plaintiff to give evidence thereof; and in the absence of all evidence the jury cannot grope in speculation for a test or assume that there was one. Authorities supra. In Kilbride v. Carbon D. & M. Co., supra, the court say:

"Though it nowhere appears, as stated, that before this accident the defendant or any other person engaged in the same business in this country had ever heard of the test method used in the two foreign countries, yet the only negligence that the jury could have found it guilty of was its failure to adopt that method. No other was called to their attention by the plaintiff as one which the defendant ought to have used, and there was nothing about the tube to even indicate that it ought to have been sent by the defendant to the National Tube Works to be retested."

The test employed by the expert, before he qualified himself to testify, consisted in determination of the pressure by discharging some of the plaintiff's capsules, and some supposedly similar thereto, into somewhat similar bottles, and also the use of further and scientific methods, more or less technical, but familiar to a chemist or a professor of physics. The conclusion reached was that the pressure "would be entirely unsafe for any such bottle," and, according to the witness' "best judgment, a bottle constructed as the one that I had, and the sample before me [the exhibit of the exploded bottle], would break." The lowest pressure was 190 pounds, and the highest 205, as the result of seven capsules used. In the course of his examination this expert testifies, "All the bottles stood the examination," and that "a" bottle used was covered with metal, not wicker; but it does not appear that he made any distinction on this account.

Some stress is laid by the plaintiff upon the fact that the bottle was covered with wicker work; whereas, others had been or were subsequently covered with metal work. But, as I have said, the expert does not make any distinction as to the nonexplosive character of the bottle on that account, and I cannot find that this feature of construction was the subject of evidence or contention by counsel or of comment by the learned court. Indeed, the fact that one of the bottles used by the expert was covered with metal was elicited by the court only, and neither party made it the subject of inquiry theretofore or thereafter. There was no testimony that a bottle of the thickness of the one in question would not have exploded if protected by metal as readily as if protected by wicker, and there is no proof that the metal would have held back the flying glass resultant from the explosion. Measured by the criterion of the plaintiff's evidence, it was the duty, then, of the defendant as vender, after having received the apparatus from a reputable manufacturer (there is not even any question as to the standing of the glass maker), to make a test of each particular bottle, at

least by discharging therein a capsule, and, for aught that appears, by the other and further tests of the expert; for he does not testify that the discharge of the capsule alone convinced him, and he does testify that all of the bottles stood the examination. There is no other course or adequate test suggested, and yet we must look to the evidence to find them, if aught there be.

In consideration of the duty of the vender, it may be borne in mind that the defendant was not the manufacturer. There is evidence, not disputed, that the bottle in which the defect is assigned was furnished to the manufacturer by the Diamond Glass Company for the express purpose of its intended use, and that this company was of very high standing; and there is evidence of various tests made by the manufacturer of the article, greatly in excess of the usual pressure resulting from the discharge of a capsule. There is no evidence that the defendant held itself out as the manufacturer, or that the plaintiff had any reason to suppose that it was such. It was a druggist, and the plaintiff, who read the printed directions before using the bottle, naturally would have seen the words, "American Sparklets Company, Bridgeport, Conn., U. S. A.," in large letters. Moreover, we are told that he had heard of the apparatus, or of its name, at least, before he saw the display in the defendant's shop. If the rule were thus extended upon the evidence in this case, no vender of manufactured articles which might, from some latent defect only revealed by use, be a source of injury to the user, would venture to sell them unless he had first tested each and every one by actual use. It seems to me, then, that as to an article not inherently dangerous we must push the rule too far if we should hold the defendant upon the evidence. In the words of Hunt, J., in Loop v. Litchfield, 42 N. Y., at page 361:

"The utmost possible care is not required. Indeed, its exercise would require an extent of time and caution that would terminate half the business of the world."

See, too, Kilbride v. Carbon D. & M. Co., supra; Cramb v. Caledonian R. R. Co., 19 Sess. Cases [1891–1892] 1054, cited in Beven on Neg. as 19 Rette, 1054; Beven on Neg. pp. 58–64.

There is another reason for the reversal of this judgment. At the close of the colloquial part of the charge, the learned counsel for the respondent, addressing the court, said:

"Let me ask you this: That he cannot escape on the ground that he purchased from a reputable manufacturer, if he could have known or should have known that the bottle was defective for the use for which it was intended.

"The Court: That is what I said to them plainly twice."

An exception was duly taken. This was the final utterance of the court to the jury. This instruction is erroneous, in that the jury were told that the defendant could not escape on the ground of purchase "from a reputable manufacturer, if he could have known," thus eliminating the element of due care. This is not only the final utterance of the court, but the court then informed the jury that it had already given such instruction; i. e., that such was the effect of the instructions heretofore given.

I advise a reversal of the judgment and the granting of a new trial; costs to abide the event. All concur.