[Civ. No. 4701. Third Appellate District.—February 24, 1934.]

CARL W. RUDAT, Appellant, v. EDNA CATHERINE CARITHERS, Respondent.

Bronson, Bronson & Slaven, Geary & Geary, C. J. Tauzer and Harold R. McKinnon for Appellant.

J. Hampton Hoge, Wallace L. Ware, George W. Murphy and A. Dal Thomson for Respondent.

JAMISON, J., *pro tem.*—This action was for damages for injuries resulting from the collision of two motor vehicles operated by plaintiff and defendant. It was tried by the court with the aid of a jury and a verdict was rendered for defendant. Plaintiff moved for a new trial, which was denied, and judgment was thereupon rendered for defendant. From this judgment plaintiff has appealed.

The sole question to be determined on this appeal is whether or not the court erred in excluding the testimony of a witness produced by plaintiff, one Frank Rieber, an alleged physicist, to explain the nature and effect of the forces which came into operation at the moment of the collision. In other words, appellant sought to show by the testimony of this witness the relative speed at which the two automobiles were traveling at the time of the collision.

This accident happened at the intersection of the Sonoma-Petaluma road and the El Verano highway. Respondent was traveling northerly on the El Verano highway and appellant was going westerly on the Sonoma-Petaluma road.

Respondent testified that she had in her car her two infant children, her little girl on the seat beside her and her little boy on a shelf behind her. She further testified that when she entered the intersection she was traveling about 20 miles per hour, that prior to entering the intersection she gave warning of her approach to it by sounding her horn, and saw appellant's car some distance down the Sonoma-Petaluma highway, about three times as far from the intersection as she was.

Two witnesses testified that they examined the marks made by the cars, shortly after the accident, and they found from said marks that the said collision occurred about two

feet north of the center of the said intersection and some four feet east of the center of the El Verano highway.

Appellant testified that he was traveling west on the Sonoma-Petaluma road and that he was about 200 or 250 feet from the intersection when he first saw respondent's car. He next saw it when he was about 50 feet from the intersection. Respondent's car was then about 125 feet from the intersection. When he first saw the car it was traveling at a speed of 50 miles per hour. When he looked the second time he sounded his horn and respondent slowed up. Appellant thought she was going to stop and let him go by, but her car began to pick up speed and entered the intersection at a speed of 60 miles per hour and turned to the left, and the front end of his car came in contact with the right side of respondent's car, that when he entered the intersection his speed did not exceed 15 miles per hour.

The only other eye-witness to the accident was S. L. Smith, who was produced by appellant and who testified that appellant passed him about a quarter of a mile from the said intersection. Appellant was then traveling about 35 miles per hour. When the witness was about 300 feet from the intersection he saw a flash about 75 or 100 feet south of the intersection on the El Verano highway. This flash was going at about forty miles per hour. Shortly after this he heard the crash of the collision. He could not observe whether or not appellant increased or diminished his speed as he entered the intersection.

After the collision the respondent's car rotated and came to a stop some 80 feet from the point of the impact; and about 25 or 30 feet from the point of collision it struck and broke off a guy pole, 12 inches in diameter at the base. The appellant's car traveled some 40 or 45 feet after the collision and struck a concrete culvert and turned over in a ditch. After the collision the right fronts of both cars were uninjured, but the left headlight and left fender of appellant's car were damaged.

The trial court sustained the objection to the hypothetical question propounded to the said Rieber upon the grounds that it was not a proper subject of expert testimony, and that it did not contain a sufficient statement of the proven facts to render it a fair hypothetical question. The hypothetical question was as follows:

"'Assuming, Mr. Rieber, 1st, the physical condition of the La Salle automobile (respondent's car), as it appears from the photographs which have been introduced in evidence as plaintiff's exhibits Nos. 2, 3, 4 and 5, to have been the condition of that automobile immediately after the collision; 2nd, the physical condition of the Dodge delivery car (appellant's car) immediately after the accident to have been the same as it now appears or appeared at the time you examined it; and assuming, 3rd, that the collision occurred at an intersection of two roads, as disclosed by this map, plaintiff's exhibit No. 1, the Dodge car traveling along the road running in a generally easterly and westerly direction, and the La Salle traveling along the road running in a generally northerly and southerly direction, the Dodge proceeding or heading westerly and on the right-hand side of the road at the time of the collision, and the La Salle proceeding or heading northerly and on the left-hand side of the road at the time of the collision, both cars being at substantially right angles to one another at the time of contact, and the contact to have been at this point in blue pencil marked 'B'; and assuming, 4th, that subsequent to the collision the Dodge car came to rest in the ditch located at this point on the map, the car being designated by this red rectangle marked 'truck' and the scale of this map being 1"-10', and that, likewise, subsequent to the collision the La Salle car traveled on its course a distance of approximately 83 feet from the point of contact, coming to rest facing south and at a point marked 'La Salle', being a red rectangle at this point on the map; and assuming, 5th, that after the collision and before it came to rest, the La Salle car turned around in a clockwise direction, as viewed from above, until it struck on its left rear side a guy wire pole situate and marked here on this map approximately 40 feet from the center of the intersection and thereafter turned around in a counter-clockwise direction until it came to a stop at the place and in the manner heretofore stated; and assuming, 6th, the fact that the La Salle car after the collision and while so turning around and proceeding in its direction, as stated, struck and broke through a guy wire pole having a diameter at its base of 12" breaking same into 3 pieces, assuming all of the foregoing, could

you, from the known laws of physics, determine the nature of the forces which must have acted to cause such motion in both cars, the points on the respective automobiles where such forces were applied, the relative magnitude of those forces, and can you describe those forces and their effects and manner of acting?"

As his question called for the nature of the forces which must have acted to cause such motion in both cars, and the magnitude of those forces and the effect that these forces would have upon the cars, in all fairness it should have contained a statement of the course pursued by appellant's car after the collision and what obstructions it had to overcome before its stopping. The question also contains some statements that are contrary to the evidence, in this, that the cars ran together at right angles, and that respondent was driving on the left-hand side of the road. The evidence shows that the two roads crossed each other at an angle, and the fact that appellant's car had its left headlight and left fender damaged and no other damage on its front would negative the inference of a collision at right angles, and there is no evidence that respondent was driving on the left side of the highway.

If the relation between the facts and their probable results can be determined without any special skill or training, the facts themselves must be given in evidence and the conclusions or inferences must be drawn by the jury. (10 Cal. Jur. 949, 950.) In *Fishman* v. *Silva*, 116 Cal. App. 1 [2 Pac. (2d) 473, 474], it is said by the court:

"For instance, where it is argued that there is a contact of two bodies in a given position, the direction of the applied force will control the position of the bodies after the impact, any rule or law, in the abstract, will be found of little value when we have the additional factors of each body in motion and controlled by independent agencies. Experience has shown the futility of attempted demonstration in accident cases; there are too many varying factors. Among these variants we may class indefinite rate of speed, condition of the highway, judgment or lack thereof in the drivers, a direct blow or a glancing one, and the balance of equilibrium of each car at the time of the impact."

To the same effect is *Johnston* v. *Peairs*, 117 Cal. App. 208 [3 Pac. (2d) 617]. In *Corcoran* v. *Ward*, 115 Cal. App. 180 [1 Pac. (2d) 455], the court said:

"The complexity of forces operating on two rapidly moving vehicles in collision with one another often makes it exceedingly difficult to reconstruct the manner of the happening of the accident from testimony concerning the marks found upon the highway and the positions and condition of the cars after the accident."

█ When all of the facts upon which the opinion is founded can be ascertained and made intelligible to the court or jury, the opinion of the witness is not to be received in evidence. (*Sappenfield* v. *Main St. etc. R. R. Co.*, 91 Cal. 48, 60 [27 Pac. 590].) The admission of evidence by an expert is largely committed to the discretion of the trial court and its action will not be reversed in the absence of a clear showing of an abuse of that discretion. (*Vedder* v. *Birely*, 92 Cal. App. 52 [267 Pac. 724]; *Maris* v. *H. Crummey, Inc.*, 55 Cal. App. 573 [204 Pac. 259].)

The trial judge is in a position to have the circumstances far more clearly before him than the appellate court can have them. A large discretion relating to the form of the question must necessarily rest with the judge.

We find no abuse of discretion in the trial judge.

The judgment is affirmed.

Plummer, J., and Pullen, P. J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on April 23, 1934.