[L. A. No. 24850. In Bank. Apr. 24, 1958.]

RUTH TRUST, Appellant, v. ARDEN FARMS COMPANY (a Corporation) et al., Respondents.

Jerrold A. Fadem for Appellant.

Belcher, Kearney & Fargo, Louis E. Kearney, Gibson, Dunn & Crutcher, Ira C. Powers, Sherman Welpton, Jr., and Steinhart, Goldberg, Feigenbaum & Ladar for Respondents.

McCOMB, J.—This is an action for damages for personal injuries suffered by plaintiff when a milk bottle she was handling in her kitchen broke as she was in the process of setting it down on a tile drainboard.

Defendants are Arden Farms Company, hereinafter called "Arden," and Owens-Illinois Glass Company, hereinafter called "Owens."

Owens manufactured a milk bottle which Arden filled with skim milk and delivered to plaintiff by placing it on her porch

on a Thursday morning. Plaintiff took the milk bottle into her home and stored it in a refrigerator.

On the Sunday following the Thursday delivery of the bottle of skim milk here involved, plaintiff was in the process of setting the bottle, half filled with milk, down on a tile drainboard when it broke, and she sustained cuts about the wrist.

The trial court granted defendants' motions for a nonsuit. Plaintiff appeals from the judgment, presenting these questions:

First: *Was the doctrine of res ipsa loquitur applicable under the facts of this case as to (a) defendant Arden or (b) defendant Owens?*

*No.* ▇ A plaintiff seeking to invoke the doctrine of res ipsa loquitur against a defendant who at a time prior to the accident has relinquished all control of the instrumentality causing the injury must affirmatively establish that the condition of the instrumentality has not changed since it left the possession of defendant. (*Simmons* v. *Rhodes & Jamieson, Ltd.*, 46 Cal.2d 190, 195 [7] [293 P.2d 26]; *Burr* v. *Sherwin Williams Co.*, 42 Cal.2d 682, 691 [10] [268 P.2d 1041]; *Escola* v. *Coca Cola Bottling Co.*, 24 Cal.2d 453, 458 [2] [150 P.2d 436].)

The rule is accurately stated by Mr. Chief Justice Gibson in *Burr* v. *Sherwin Williams Co., supra,* as follows: "The instructions given, however, were erroneous in that, while they purported to state all the conditions under which res ipsa loquitur would be applicable, they did not inform the jury that plaintiffs must show that the instrumentality which caused the damage was not mishandled *or its condition otherwise changed after control was relinquished by the person against whom the doctrine is to be applied.*" (Italics added.)

▇ In *Honea* v. *City Dairy, Inc.*, 22 Cal.2d 614, 618 [3] [140 P.2d 369], this court said: "The mere breaking of the bottle alone cannot give rise to an inference that defendant was negligent in *failing to discover* the defect. ▇ While the dairy may have had a duty to make an examination of all bottles, whether newly purchased or returned by prior customers, it is not responsible for defects that cannot be found by a reasonable, practicable inspection. (Citations.) In the present case there is no evidence that a feasible means of discovering the defect or flaw was available to this defendant. The language of the court in *Loebig's Guardian* v. *Coca-Cola Bottling Co.*, 259 Ky. 124 [81 S.W.2d 910], is particularly

appropriate. In holding that res ipsa loquitur was not applicable to the explosion of a coca-cola bottle, the court said (pp. 911-912) : 'The defendant was not, under the circumstances, an insurer, and it was not shown that there was any more reasonably practicable method of inspection used in the industry than the method of inspection admittedly adopted by the defendant. Suppose the bottle *was* defective. A conclusion of negligence could not arise without some showing that the defect could have been discovered by the exercise of ordinary care. . . . In the instant case we are still left to conjecture as to the cause of the defect in the bottle and its contents or whether it was such a defect as might have been discovered by a more thorough inspection. Unless we are prepared to hold defendant as an insurer, it is hard to see how else it could be held responsible without some showing that its opportunity to exercise care was in some measure proportionate to the duty imposed—without some showing that a more thorough inspection would have been effective. Plaintiff's experts suggest various methods of testing bottles which might be applied, but it is not shown that these tests are commercially practicable or that they would have disclosed the complained-of defect. . . . We must measure the duty by ordinary standards and by consequences reasonably to be anticipated. Subject to these criteria, it is clear that the proof falls short of raising any inference of negligence.'

"In *Licari* v. *Markotos,* 110 Misc. 334 [180 N.Y.S. 278], the court held a bottler not liable for injuries caused by breaking of a bottle of a non-explosive cleaning and dyeing preparation, saying (p. 280 [N.Y.S.] ) : 'Nor is there any force in respondent's contention, strenuously urged upon this appeal, that the defendant failed in his duty to inspect the bottles before filling them; this for the reason that there is no proof that any examination or inspection would have found the existence of any defect. If such had been the case, it was the plaintiff's duty to give evidence thereof. *Bruckel* v. *J. Milhau's Son,* 116 App. Div. [832] 836 [102 N.Y.S. 395]. In the absence of such evidence, the learned trial justice had no foundation upon which to predicate any finding of negligence on defendant's part, and a judgment for plaintiff could be based on none other than speculation and pure guesswork.' "

■ (a) With reference to Arden, the record discloses that on the day the bottle in question, filled with skim milk, had been delivered to plaintiff's porch, plaintiff had carried the

container holding that bottle and other bottles of milk into the house, wiped the bottles, and put them in the refrigerator. All bottles of milk were stored on one wire shelf in the refrigerator, which shelf held eight bottles. The average daily delivery of milk to plaintiff's home was four bottles. When plaintiff had placed the bottles of fresh milk on this shelf, she followed her custom of moving the bottles of older milk forward on the shelf and storing the bottles of fresh milk behind them. To this procedure there was one exception,— the bottle of skim milk received in the delivery was always kept at the front of the shelf.

The accident occurred on Sunday, March 7, 1954, and involved the bottle of skim milk delivered the preceding Thursday. Between the time of the delivery of the particular bottle of skim milk and the time of the accident, the bottle had been removed at least once by plaintiff and some of the contents used. Plaintiff had three children, aged 10, 9 and 5 at the time of the accident, each of whom had access to the milk in the refrigerator. The skim milk bottle was identified for the children by a band placed around the neck of the bottle by plaintiff.

From the foregoing evidence, it is clear that any of plaintiff's three children, having as they did access to the refrigerator at all times, may have struck the bottle of skim milk with another bottle and damaged it prior to the time of the accident, or it may in some other manner or fashion have been damaged.

The children were not called as witnesses to negate maltreatment of and damage to the bottle by them prior to the time of the accident. Plaintiff's husband, who also had access to the refrigerator, was called as a witness, but he made no attempt to show that the bottle had not been damaged after it had been received and prior to the time of the accident.

From the foregoing evidence, it is clear that the above stated rule was not met in the present case and that there is a complete hiatus as to what, if anything, happened to the bottle between the time it was placed in the refrigerator by plaintiff and the time the injury occurred. Hence, the doctrine of res ipsa loquitur was inapplicable to the facts of this case.

▋ (b) With reference to Owens, there is a total absence of any evidence that the bottle was not mishandled or its condition changed after it passed from Owens' control.

Since the doctrine of res ipsa loquitur was not applicable

and there was a total absence of any evidence of negligence upon the part of either defendant, the nonsuit was properly granted.

 Second: *Was there a breach of warranty upon the part of Arden?*[1]

*No.* There was no evidence that the bottle was defective when delivered by Arden to plaintiff, and therefore there is no basis for claiming any breach of warranty. The doctrine of res ipsa loquitur relates to cases involving negligence and has no application to an alleged breach of warranty. (*Oregon Auto-Dispatch* v. *Portland Cordage Co.*, 51 Ore. 583 [95 P. 498, 499]; *Poovey* v. *International Sugar Feed No. 2 Co.*, 191 N.C. 722 [133 S.E. 12, 14 [3, 4]]; *Stonebrink* v. *Highland Motors*, 171 Ore. 415 [137 P.2d 986, 990]; *cf. Gerber* v. *Faber*, 54 Cal.App.2d 674, 686 [4] et seq. [129 P.2d 485].)

 Third: *Was there any evidence that defendants, or either of them, breached any of the provisions of section 701 of the Agricultural Code?*[2]

*No.* There was no evidence that the bottle in question was not "sound, smooth and free from rust" as required by section 701 of the Agricultural Code when delivered by Arden to plaintiff's porch. The only evidence on this subject came from plaintiff's expert, who testified that the bottle had a

---

[1]Plaintiff and defendant Owens stipulated that plaintiff had no cause of action for a breach of warranty against defendant Owens.

[2]Section 701 of the Agricultural Code reads:

"(a) Every restaurant, school, hospital, soda fountain or other place where food or drink is served to the public, which sells milk, cream, ice cream, ice milk, buttermilk or any combination thereof for consumption on the premises, upon emptying the containers thereof, which are to be returned to the milk distributor or manufacturer, shall cause such containers, except glass containers, to be rinsed and drained.

"(b) All containers of milk, cream or products thereof which are delivered to the consumer by any retailer or distributor and which are to be returned to such retailer or distributor shall be rinsed and drained before they are returned.

"(c) All containers except single service containers of any kind in which milk or any product of milk is kept, stored, transported or delivered, shall be sound, smooth, free from rust or open seams and at all times kept in a condition which will permit thorough cleansing of all surfaces with which the milk or its products come in contact. Containers including ice cream cabinets commonly used or intended for the reception, storage or delivery of milk, cream or products thereof shall be used exclusively for the storage and use of milk and milk products and shall not be used for any other purpose. All empty containers delivered to any producer, manufacturer, retailer or distributor for the reception of milk or any product of milk shall be kept in a clean, sanitary, and sterile condition and shall be used for no other purpose."

"thin" area around the top but that it did not make such bottle unsafe for the use to which Arden applied it.[3]

Fourth: *Did the trial court err in excluding offered evidence?*

*No.* Plaintiff contends that the trial court erred in not permitting her to introduce evidence:

(a) That there were other containers for milk such as round bottles, stippled bottles, cardboard cartons, and others.

This evidence was clearly immaterial to any issue before the court. Although glass is subject to breakage, it has many qualities as a food container which no paper container can fulfill, e.g., lower porosity, impermeability to odor, transparency, and cleanliness.

(b) That Arden had delivered six allegedly defective milk bottles to plaintiff's home during the six months following the accident.

This evidence was also properly excluded. It is the general rule that evidence of subsequent accidents has no probative tendency to show that a defendant might reasonably have anticipated the previous accident, and therefore such evidence is inadmissible. (*McCormick* v. *Great Western Power Co.*, 214 Cal. 658, 668 [5] [8 P.2d 145, 81 A.L.R. 678].)

Fifth: *Did the trial court unduly limit the examination of the expert witness, Benson?*

*No.* Plaintiff contends that the witness should have been permitted to testify as to whether the bottle was safe and what the standards for milk bottles ought to be.

This testimony was properly excluded for the reason that the bottle had stood the test of at least several months' use and the witness testified that the bottle had no defect that was apparent or could be demonstrated or established. He also admitted that he had had no prior experience with milk bottles or the dairy trade. Therefore, no foundation was laid for testimony from him regarding what the standards of safety for milk bottles were.

The rule is settled that an expert is not qualified as a witness unless it is shown that he is familiar with the

---

[3]The witness testified:

"The Court: (Interrupting) There isn't any question but what thinner glass is more susceptible to breakage than thicker glass, but is it of such a degree that it would make the bottle, as a unit, unsafe, or have an effect on its safety—have an effect on its safety for the use for which it is intended?

"The Witness: I wouldn't say that, no."

standards required under similar circumstances (*Huffman* v. *Lindquist*, 37 Cal.2d 465, 476 [9] [234 P.2d 34, 29 A.L.R.2d 485]); also, that the trial court's ruling upon the sufficiency of the qualification of an expert will not be disturbed on appeal in the absence of a showing of abuse of discretion. (*Beresford* v. *Pacific Gas & Elec. Co.*, 45 Cal.2d 738, 749 [13] [290 P.2d 498, 54 A.L.R.2d 910]; *Bennett* v. *Los Angeles Tumor Institute*, 102 Cal.App.2d 293, 296 [4] [227 P.2d 473]; *Rudat* v. *Carithers*, 137 Cal.App. 92, 97 [3] [30 P.2d 435].)

In the present case the evidence did not meet the above requirements.

Sixth: *Did the trial court err in denying plaintiff's request that the jury be permitted to inspect Owens' premises?*

*No.* Section 610 of the Code of Civil Procedure reads: "When, *in the opinion of the Court*, it is proper for the jury to have a view of the property which is the subject of litigation, or of the place in which any material fact occurred, it may order them to be conducted, in a body, under the charge of an officer, to the place, which shall be shown to them by some person appointed by the Court for that purpose. While the jury are thus absent, no person, other than the person so appointed, shall speak to them on any subject connected with the trial." (Italics added.)

It is thus evident that the matter of inspection is left to the sound discretion of the trial court, and in the absence of a showing of abuse of discretion, as in the present case, the trial court's denial of an inspection will not be disturbed on appeal. (*Nunneley* v. *Edgar Hotel*, 36 Cal.2d 493, 501 [6] [225 P.2d 497]; *Laguna Salada etc. Dist.* v. *Pacific Dev. Co.*, 119 Cal.App.2d 470, 477 [14] [259 P.2d 498].)

The judgment is affirmed.

Shenk, J., Schauer, J., and Spence, J., concurred.

CARTER, J., Concurring and Dissenting.—I concur in the judgment insofar as it sustains the granting of nonsuit as to Owens-Illinois Glass Company, but disagree with a similar conclusion reached in connection with defendant Arden Farms.

The majority concludes that plaintiff failed to present any evidence to negate maltreatment of the bottle by her and her family after its delivery, and thus, the doctrine of res ipsa loquitur does not apply. It is also held that there is no evidence to support a finding of breach of warranty since no

defect in the bottle had been shown to exist. On the basis of the facts as stated in the majority opinion these conclusions are warranted. However, it is submitted that there are material omissions in the majority's factual statement, which, when viewed according to the rule on nonsuit, renders such conclusions erroneous.

The record reveals that plaintiff established the following uncontroverted facts. The bottle in question was manufactured by Owens sometime in 1953; part of the manufacturing process required that Arden's name be written on the bottle. Shortly thereafter the bottle was sent to Arden and used in their business of delivering milk for the months preceding the time of breaking in 1954. At the manufacturing stage bottles are subjected to a test for visual defects, and in addition, manufacturer Owens conducts statistical tests for latent defects. These statistical tests consist of taking a certain number of bottles from the production line and subjecting them to thermal-shock impact tests which reveal any latent defects. This test is regarded as 95-98 per cent effective in insuring that the remaining bottles not so tested will be free from hidden defects. At the bottling level, Arden inspects new as well as returned bottles for visual defects to discover any damage that might have occurred in shipping or while in use, but no test is maintained to discover latent defects.

Plaintiff's expert witness testified that he had examined the reconstructed parts of the broken bottle and that the cause of the bottle's breaking was impact, but that from observing the fragmentation pattern of the percussion cone and the absence of spalling (chipping and shattering) the contact was extremely mild. He further stated that an analysis of the fragmentation pattern led him to the conclusion that the bottle could have only broken because of a defect. His study indicated that the defect was at the base of the bottle, but it was impossible to determine its precise nature.

Plaintiff's milk delivery consisted of four quarts of milk, including a quart of skim milk, every other day, which was placed on a refrigerator shelf having space for eight quarts. The quart of skim milk being distinguished from the other bottles by a blue rubber band placed around its neck.

As to the treatment of the bottle after it was delivered, plaintiff testified that she was always careful with the milk bottles, and that the skim milk while kept on the same shelf as the homogenized milk was apart from it, permitting access to the homogenized milk without disturbing the skim milk.

Plaintiff also stated that no member of her family, including the children, had ever broken any bottles, and that no one but herself used the skim milk. No objection was made to the evidence of past acts of due care.

The question before this court is whether disregarding conflicting evidence, giving to the plaintiff's evidence all the value to which it is legally entitled, and indulging in every legitimate inference which may be drawn from that evidence, the evidence is of sufficient substantiality to support a verdict in favor of plaintiff (see *Leonard* v. *Watsonville Community Hospital*, 47 Cal.2d 509, 514-515 [305 P.2d 36]).

Reading the evidence presented against the background of this rule, it must be concluded that plaintiff has established a prima facie case against Arden based upon three possible theories: (1) negligence by invoking the doctrine of res ipsa loquitur; (2) negligence by proof of specific acts; and (3) breach of warranty, rendering the nonsuit improper in this regard. However, as to Owens, plaintiff has failed to establish a prima facie case based either on the doctrine of res ipsa loquitur or specific acts of negligence, and since plaintiff stipulated that no breach of warranty action existed against Owens the granting of the nonsuit in this respect was proper.

In connection with the doctrine of res ipsa loquitur, it may be invoked where (1) defendant had exclusive control of the instrumentality causing the injury, and (2) the accident is of such a nature that it ordinarily would not occur in the absence of negligence of defendant (see *Escola* v. *Coca Cola Bottling Co.*, 24 Cal.2d 453, 457-458 [150 P.2d 436]). The exclusive control requirement is modified to the extent that if defendant had control at the time of the alleged negligent act and plaintiff proves that the condition of the instrumentality causing the injury had not changed after it left defendant's possession, then plaintiff may avail himself of the doctrine providing the other condition is satisfied (see *Honea* v. *City Dairy, Inc.*, 22 Cal.2d 614, 617-618 [140 P.2d 369]; *Escola* v. *Coca Cola Bottling Co., supra*, 458). The extent of plaintiff's burden of proving that the condition of the instrumentality is unchanged is fully discussed in *Escola* v. *Coca Cola Bottling Co., supra*, 458-459, where it is stated: "It is not necessary, of course, that plaintiff eliminate every remote possibility of injury to the bottle after defendant lost control, and the requirement is satisfied if there is evidence permitting a reasonable inference that it was not accessible to extraneous harmful forces and that it was carefully handled by plaintiff

or any third person who may have moved or touched it. [Citation.] If such evidence is presented, the question becomes one for the trier of fact [citation], and accordingly, the issue should be submitted to the jury under proper instructions.'' (See also *Zentz* v. *Coca Cola Bottling Co.*, 39 Cal.2d 436, 444 [247 P.2d 344].)

Contrary to the majority opinion there is evidence which can form the basis of a reasonable inference that the condition of the bottle had not changed. Plaintiff testified that she handled the bottle with due care. This evidence is sufficient to satisfy the requirement that the bottle had not changed insofar as plaintiff's handling is concerned (see *Honea* v. *City Dairy, Inc., supra*, 618). While there is no direct evidence that the bottle was carefully handled by third persons having access to it, there is circumstantial evidence on which a reasonable inference can be predicated that these persons exercised due care in handling the milk bottle, if they handled it at all. Plaintiff stated that no one in her family had ever broken a bottle. She added that the bottle was not used by any other member of her family. Such sole use being guaranteed by the fact the bottle was designated by a blue rubber band, its purpose known to all members of the household. It was further established that while all the milk bottles were kept on the same shelf, the skim was kept ''apart'' from the homogenized milk. It may be inferred from the fact that the shelf had space for eight bottles, and only four were delivered every other day, that being ''apart'' was of sufficient degree that access to the homogenized milk was possible without disturbing the skim milk. From the combination of the facts that the skim milk was used only by plaintiff, and that no member of the family had ever broken a bottle, plus the inference that the skim milk was ''apart'' permitting access to other bottles, a jury could reasonably conclude that the third persons did not touch the skim milk or if they did it was done with due care.

Having met the burden of showing that her conduct and her family's action did not in any way deviate from the exercise of due care, which consequently excludes the possibility of the accident being caused by plaintiff or her family, plaintiff can now invoke the doctrine of res ipsa loquitur by showing that the manner in which the bottle was broken does not ordinarily happen without negligence for which Arden is probably responsible.

The substantive content of this requirement has been vari-

able, and it is necessary to review the cases discussing it. As a preliminary point all cases agree that bottlers of beverages, including dairies, have a duty of care to inspect bottles whether newly purchased or returned by prior customers (see *Honea* v. *City Dairy, Inc., supra*, 618; *Escola* v. *Coca Cola Bottling Co., supra*, 460; *Gordon* v. *Aztec Brewing Co.*, 33 Cal.2d 514, 517 [203 P.2d 522]; *Zentz* v. *Coca Cola Bottling Co., supra*, 448). In *Honea* v. *City Dairy, Inc., supra*, it was held that the breaking of a milk bottle is alone insufficient under the doctrine of res ipsa loquitur to permit the additional and necessary inference of negligence by defendant, either in causing the defective condition or in failing to discover it by proper inspection. However, in reaching this conclusion a rule was suggested that where plaintiff can demonstrate that there was a defect and there were reasonable means of discovering the defect in the exercise of due care, then this constitutes sufficient evidence from which to infer that it is more probable than not defendant was negligent in failing to discover the defect. This suggested rule was adopted in *Escola* v. *Coca Cola Bottling Co., supra*, 458, and again in *Gordon* v. *Aztec Brewing Co., supra*. In the Escola case this court permitted the application of the doctrine of res ipsa loquitur after plaintiff had established that no unreasonable extraneous force had acted upon the bottle subsequent to delivery, and upon the ground there was an inference that defendant failed to exercise due care in inspecting the bottle since it could be determined from the evidence that the bottle had a visual defect that could have been ascertained by a reasonable inspection. The evidence relied upon to create such an inference dealt with the inspection methods in the industry. Following the Escola case this court was faced with a similar question in *Gordon* v. *Aztec Brewing Co., supra*, and the Escola rule was followed. To summarize the law as it existed after the Aztec Brewing Company case, plaintiff was entitled to invoke the doctrine of res ipsa loquitur in cases involving bursting or breaking bottles where (1) there was a showing that no external harmful force touched the bottle after leaving defendant's control and (2) where evidence was presented that the bottle contained a defect that could be discovered by a practicable and reasonable inspection.

In *Zentz* v. *Coca Cola Bottling Co., supra*, the former requirement was retained while the latter was altered materially. The rule this court announced therein stated that plaintiff may invoke the res ipsa loquitur doctrine where he introduces

evidence sufficient to warrant an inference that the bottle was not mistreated subsequent to its delivery by defendant and where the accident was of such a nature that it can be said, in the light of past experience, that it probably was the result of negligence by someone and defendant is probably the person who is responsible (*Zentz* v. *Coca Cola Bottling Co.*, *supra*, 446). The court determined that if plaintiff demonstrated that he was not an intervening cause, the happening of the exploding bottle gave rise to an inference of negligent conduct on the part of the defendant. This ruling leads to the conclusion that it is no longer necessary to present evidence that the defect could have been discovered by a practicable and reasonable inspection before the doctrine of res ipsa loquitur may be invoked. The test now is whether from the happening of the accident it is more probable than not that defendant was negligent.

Applying this rule to the case at bar it is clear that an inference of negligence arises from the breaking of the bottle. Plaintiff has established that no harmful intervening forces touched the bottle after it left defendant's control; common experience tells us that glass milk bottles, when handled as plaintiff did, do not ordinarily break, and since Arden has a duty to inspect bottles for visual defects, it is more probable that a dangerous bottle was placed on the market by a negligent act of Arden, and it is, therefore, responsible for the damage caused. Moreover, in this case we have expert testimony that the bottle broke as a result of a defect, which renders the inference that defendant was negligent in either wholly failing to inspect the bottle, or in failing to make a reasonable inspection all the more probable. This probability is further underscored by the principle that the possibility of the defect in the bottle being latent and not visually discoverable is regarded as insufficient to prevent the application of the doctrine of res ipsa loquitur (*Zentz* v. *Coca Cola Bottling Co.*, *supra*, 449).

I am unconvinced by the distinction attempted to be drawn in the Zentz case between bottles that contain carbonated beverages and bottles that contain milk or noncarbonated beverages (see dissenting opinion, *Honea* v. *City Dairy, Inc.*, *supra*, 623). The question is not whether the bottle contains carbonated or noncarbonated beverages, but whether it is safe to use for the purpose designed. If a bottle containing milk breaks in a customer's hand, the inference of defendant's negligence is no less probable than if a bottle containing a

carbonated beverage explodes. In either case the bottle was not safe for its proposed use because of some defect from which we infer a bottler's negligence in failing to discover it. The nature of the beverage adds nothing to this inference.

In addition, plaintiff's evidence would support a finding that Arden failed to reasonably inspect the bottle, violating its duty of care. As discussed previously, plaintiff and her family did not mistreat the bottle subsequent to its delivery by defendant, and what is the corollary, the defect was in existence prior to plaintiff's handling. Owens established that their inspection for latent defects is 95-98 per cent infallible, which plaintiff's expert substantiated, further stating that he found no latent defect in the bottle. This evidence plus the fact that the bottle was in use for several months by Arden sustains a reasonable inference that the bottle had no latent defects, and the defect that did exist was a visible one. From the foregoing it follows that the defect was one that defendant should have discovered when inspecting the bottles and failure to do so constitutes negligent conduct which the jury could find proximately caused plaintiff's injury.

The evidence presented by plaintiff, as indicated above, also supports a cause of action predicated on breach of implied warranty under section 1735 of the Civil Code. In substance section 1735 provides that the seller of goods impliedly warrants to the buyer who relies on the seller's skill that the goods shall be reasonably fit for the purpose sold or if a sale by description the goods are of merchantable quality. Preliminary to maintaining an action for breach of warranty the California cases require privity,* i.e., the buyer can only sue his immediate seller (*Burr* v. *Sherwin Williams Co.*, 42 Cal.2d 682, 695-696 [268 P.2d 1041]), notice (*Whitfield* v. *Jessup*, 31 Cal.2d 826, 828 [193 P.2d 1]), sale (*Mix* v. *Ingersoll Candy Co.*, 6 Cal.2d 674, 676 [59 P.2d 144]), and a reliance on the seller's judgment that the goods are fit for the purpose sold (Civ. Code, § 1735).

These prerequisites have been satisfied. It is clear plaintiff was in privity with Arden, that proper notice was given and that plaintiff relied on Arden's judgment that the bottle was

---

*California admits an exception to the privity requirement in cases involving foodstuffs where it is held that an implied warranty of fitness for human consumption runs from the manufacturer to the ultimate consumer regardless of privity of contract. (*Klein* v. *Duchess Sandwich Co., Ltd.*, 14 Cal.2d 272 [93 P.2d 799]; *Vaccarezza* v. *Sanguinetti*, 71 Cal. App.2d 687, 689 [163 P.2d 470].)

safe as a container for milk. However, a question does arise as to whether there was a sale of the bottle. This has never been authoritatively answered in California and there is a split among the cases in other jurisdictions that have considered the question, but the weight of authority is that there is a sale of the bottle. In *Naumann* v. *Wehle Brewing Co.*, 127 Conn. 44 [15 A.2d 181], it was held that the warranty under the sales act extends to a returnable beverage container, ruling that there had been a sale of the bottle. To the same effect, *McIntyre* v. *Kansas City Coca Cola Bottling Co.* (Mo.), 85 F.Supp. 708, 711; *Nichols* v. *Nold*, 174 Kan. 613 [258 P.2d 317]; *Mead* v. *Coca Cola Bottling Co.*, 329 Mass. 440 [108 N.E.2d 757]. In two other states, New Jersey and New York, the courts have ruled that in the sale of consumer goods in a bottle, the seller warrants the fitness of the container as much as the contents on the ground that the container is an essential part of the transaction, it being immaterial whether the bottle is sold with the contents or subject to a refund of deposit or return. (*Cooper* v. *Newman*, 11 N.Y.S.2d 319; see *Healey* v. *Trodd*, 124 N.J.L. 64 [11 A.2d 88].)

The jurisdictions that have denied extending the warranty to the container have done so on the grounds either that the container was not covered by the act (*Poplar* v. *Hochschild, Kohn & Co.*, 180 Md. 389 [24 A.2d 783]), or that the Uniform Sales Act had not been adopted in their jurisdiction (*Soter* v. *Griesedieck Western Brewery Co.*, 200 Okla. 302 [193 P.2d 575, 4 A.L.R.2d 458]). In the only California case, the court, in dictum, discussed the question in a light that does not speak favorably of extending warranty to the container (*Gerber* v. *Faber*, 54 Cal.App.2d 674, 687-688 [129 P.2d 485]). However, this case is by no means conclusive and should not operate to prevent this court from considering the problem as an original proposition.

I am persuaded that the more reasoned rule, supported by the realities of the situation is that the warranty extends to the milk bottle whether returnable or not, there being a "sale" of the milk bottle within the meaning of that word as it is used in Civil Code, section 1735, when *it is delivered to a customer.* In fact the buyer had no choice but to accept the bottles delivered by Arden. They were selected solely by the seller for the purpose of containing milk, and placed at the buyer's doorstep by Arden's choice alone. Since a container is necessary for the sale of milk, Arden in any such sale must provide a container suitable for the purpose and the failure

to provide such container would render the sale of milk as we know it today commercially impossible. Thus, the dairy's sale involves the container as much as the milk. The fact the bottle may be returned does not prevent there being a "sale" of it, for returning bottles is not mandatory upon the customer, who may keep it in his discretion, but returns it as a matter of convenience to himself and the dairy, which in turn saves him additional expense in purchasing milk.

With the preliminary requirements satisfied it is now possible to consider whether the evidence would support a verdict that there has been a breach of implied warranty. This question involves ascertaining what it is that Arden impliedly warrants. Plaintiff contends the implied warranty is that the bottle is fit for the purpose for which it is supplied, namely as a container for milk, and that when a defective bottle is placed on the market there is a breach of this warranty, which renders Arden absolutely liable to an immediate buyer without proof of negligence for any injury caused by the defect.

Normally it is a policy question whether a particular warranty should be imposed, which imposition requires the court to choose a party who is best suited to bear the burden of absolute liability in order to protect the consumer who is not in a position to do so himself (see concurring opinions, *Escola* v. *Coca Cola Bottling Co., supra,* 462-464; *Gordon* v. *Aztec Brewing Co., supra,* 530). Fortunately in this case we are aïded in our policy decision by a statement of legislative intent which strongly suggests that the implied warranty argued for is to be applied. This statement is found in section 701 of the Agricultural Code and provides in part: "(c) All containers except single service containers of any kind in which milk or any product of milk is kept, stored, transported or delivered, shall be sound, smooth, free from rust or open seams and at all times kept in a condition which will permit thorough cleansing of all surfaces with which the milk or its products come in contact. . . ." This section creates a duty on the part of all suppliers of milk products to use sound bottles and thereby argues powerfully for the proposition that an implied warranty in this respect is to be imposed. Certainly section 701 permits us to wean ourselves from the belief that such a warranty is against traditional practices. Adding to the force of the statute, cases where implied warranties have been found to exist, such as food cases referred to above, and cases involving fitness and strength of component parts

of machinery (*Tremeroli* v. *Austin Trailer Equip. Co.*, 102 Cal.App.2d 464 [227 P.2d 923]) there seems little or no reason for determining that such a warranty does not exist in this case. To the contrary all authority and reason press for the application of such a warranty since Arden is in the better position to know of the quality of the thing dealt with and may forestall any injury to its customers, who obviously refrain from taking protective care in reliance on the seller removing all dangers of defective bottles. And finally as a matter of policy a warranty should be imposed on the grounds that "The cost of an injury and the loss of time or health may be an overwhelming misfortune to the person injured, and a needless one, for the risk of injury can be insured by the manufacturer and distributed among the public as a cost of doing business." (Concurring opinion, *Escola* v. *Coca Cola Bottling Co.*, *supra*, 462.) Arden can be held to impliedly warrant, therefore, that all milk bottles will be safe for normal use and free from any unreasonable dangerous defects.

To render Arden liable under the warranty theory plaintiff must show that the goods were unreasonably dangerous either for the use to which they would ordinarily be put or for some special use which was brought to the attention of the seller, and that the unreasonably dangerous condition existed when the goods left the seller's hands (*Mix* v. *Ingersoll Candy Co.*, *supra*; *Silva* v. *F. W. Woolworth Co.*, 28 Cal. App.2d 649 [83 P.2d 76]). The same evidence used to establish the theories of negligence also may be applied to demonstrate that there was a defect, which rendered the ordinary use of the bottle dangerous, and that it existed prior to plainiff's acquisition. Having introduced evidence to support the essential elements in a breach of warranty action Arden is liable regardless of any proof of negligence.

Turning to the question of the correctness of the nonsuit as to Owens we need discuss only the theories of negligence in view of the stipulation pertaining to breach of warranty.

As far as the doctrine of res ipsa loquitur is concerned, it appears that based upon past experience we cannot say that from the breaking of the bottle it is more probable than not Owens was negligent. The evidence established that the defect was a visible one and not latent, indicating that Owens performed its duty to inspect for latent defects with due care. Secondly the bottle was in use for several months after its delivery to Arden. The inference from this evidence is that

the defect developed sometime after Arden put it to use since past experience and common knowledge tell us that if the defect that existed at the time of the breaking, existed when the bottle was acquired by Arden, the bottle would have been broken in Arden's plant or by the first several customers using it. Because it did not break the most probable inference is that the bottle left Owens free of defects.

Nor can the res ipsa loquitur doctrine be invoked on the ground that plaintiff is in doubt as to which defendant is liable. Plaintiff relies on *Ybarra* v. *Spangard*, 25 Cal.2d 486 [154 P.2d 687, 162 A.L.R. 1258], and *Summers* v. *Tice*, 33 Cal.2d 80 [199 P.2d 1, 5 A.L.R.2d 91], but in those cases the application of the doctrine was permitted because plaintiff was faced with the dilemma of being able to prove a negligent act, but unable to prove which of the multiple defendants committed the act. In the instant case plaintiff is not faced with such dilemma, but is able to show exactly which defendant was negligent and what the nature of this negligence was. Under such circumstance plaintiff cannot claim multiple defendants justifies invoking the doctrine of res ipsa loquitur.

As for proving Owens committed specific acts of negligence the record is devoid of any evidence which would support such a finding.

For the foregoing reasons the judgment of the trial court should be affirmed as to defendant Owens, but reversed with respect to defendant Arden Farms.

TRAYNOR, J., Concurring and Dissenting.—The evidence that plaintiff handled the bottle carefully and that the impact causing it to break was only a mild one was sufficient to support a finding that it was defective when Ardens Farms delivered it to plaintiff. It is reasonable to infer not only that this impact occurred when plaintiff placed the bottle on the drain board but that it was no more severe than the normal impact attending such placement. Therefore plaintiff's expert could justifiably conclude that the bottle was defective in some way at the time it broke, even though he could not determine the nature of the defect from an examination of the broken bottle. It could reasonably be inferred that no other member of plaintiff's family handled the bottle, since she was the only one who used skimmed milk and it was her custom to identify the bottle of such milk with a rubber band and to set it to one side of the milk-bottle tray in the refrig-

erator. Conceivably others in the family could have struck the other bottles against that one; but that possibility is remote given the evidence that no member of the family had ever broken a milk bottle. Milk bottles are ordinarily sturdy enough to withstand the impacts of normal usage. The bottle in question was not, and it is therefore reasonable to conclude that it was defective when delivered to plaintiff. (See *Gordon* v. *Aztec Brewing Co.*, 33 Cal.2d 514, 532 [203 P.2d 522], concurring opinion.)

Although I believe that there is also sufficient evidence of the other elements of a cause of action for breach of warranty, I would emphasize that "The remedies of injured consumers ought not to be made to depend upon the intricacies of the law of sales." (*Ketterer* v. *Armour & Co.*, 200 F. 322, 323; *Klein* v. *Duchess Sandwich Co., Ltd.*, 14 Cal.2d 272, 282 [93 P.2d 799].) Liability should not be determined mechanically by fortuitous circumstances. It should not be controlling that the injury occurs after rather than before a sale. (Compare *Mead* v. *Coca Cola Bottling Co.*, 329 Mass. 440 [108 N.E.2d 757, 759] [bottle exploded after it was taken from vending machine: warranty] with *Lasky* v. *Economy Grocery Stores*, 319 Mass. 224 [65 N.E.2d 305, 307] [bottle exploded before customer in self-service store carried it past the check stand: no warranty].) It should not be controlling that the bottle is sold rather than bailed. (See *Cooper* v. *Newman*, 11 N.Y.S.2d 319, 320; *Geddling* v. *Marsh* [1920], 1 K.B. 668, 672-673.) It should not be controlling that the consumer is found to be in privity of contract with the defendant rather than not. (See *Klein* v. *Duchess Sandwich Co., Ltd.*, 14 Cal. 2d 272 [93 P.2d 799].) The liability of the manufacturer should not turn on whether he has "contracted" to assume it under such erratic tests that haphazardly afford recovery to some and deny it to others. "[P]ublic policy demands that responsibility be fixed wherever it will most effectively reduce the hazards to life and health inherent in defective products that reach the market." (*Escola* v. *Coca Cola Bottling Co.*, 24 Cal.2d 453, 462 [150 P.2d 436], concurring opinion; see 2 Harper and James, Torts, pp. 1570 et seq.)

In the Escola case, as in *Gordon* v. *Aztec Brewing Co.*, 33 Cal.2d 514 [203 P.2d 522], the court invoked res ipsa loquitur to affirm judgments for damages resulting from explosions of beverage bottles. My own concurrence in those judgments rested on the ground that "it should now be recognized that a manufacturer incurs an absolute liability when an article

that he has placed on the market, knowing that it is to be used without inspection, proves to have a defect that causes injury to human beings." (24 Cal.2d at 461.) I adhere to that view and would therefore reverse the judgment of nonsuit in favor of Arden Farms in this case.

Although this court in *Burr* v. *Sherwin Williams Co.*, 42 Cal.2d 682, 695-696 [268 P.2d 1041], refused to extend strict liability to property damage in the absence of privity of contract or an express representation of the manufacturer relied upon by the ultimate purchaser, it has recognized that manufacturers are strictly liable to the consumer in cases of foodstuffs. (*Klein* v. *Duchess Sandwich Co., Ltd.*, 14 Cal.2d 272 [93 P.2d 799].) To date a majority of the court have solved the problem of liability for harm caused by defective food containers in terms of negligence without considering strict liability as an alternative ground of recovery. (*Honea* v. *City Dairy, Inc.*, 22 Cal.2d 614 [140 P.2d 369]; *Escola* v. *Coca Cola Bottling Co.*, 24 Cal.2d 453 [150 P.2d 436]; *Gordon* v. *Aztec Brewing Co.*, 33 Cal.2d 514 [203 P.2d 522]; *Zentz* v. *Coca Cola Bottling Co.*, 39 Cal.2d 436 [247 P.2d 344].) Whatever the arguments for limiting the manufacturer's strict liability to foodstuffs, there is no rational basis for differentiating between foodstuffs and their containers. (*Nichols* v. *Nold*, 174 Kan. 613 [258 P.2d 317, 323]; *Cooper* v. *Newman*, 11 N.Y.S.2d 319, 320; *Haller* v. *Rudmann*, 249 App.Div. 831 [292 N.Y.S. 586, 587]; *McIntyre* v. *Kansas City Coca Cola Bottling Co.* (Mo), 85 Fed.Supp. 708, 711; *Mahoney* v. *Shaker Square Beverages, Ohio C. P.*, 102 N.E.2d 281, 289; *Geddling* v. *Marsh*, [1920] 1 K.B. 668, 672-673; *Morelli* v. *Fitch and Gibbons*, [1928] 2 K.B. 636, 642-644; see Prosser, Torts, [2d ed.] § 84, p. 509.) It would clarify the law to repudiate that differentiation openly rather than to circumvent it covertly and haphazardly by leaving juries free to impose strict liability if they so choose, under the guise of res ipsa loquitur. (See concurring opinion in *Gordon* v. *Aztec Brewing Co.*, 33 Cal.2d 514, 532 [203 P.2d 522], and cases cited.)

There is no evidence that the bottle was defective when it was delivered to Arden Farms by Owens-Illinois. Since it withstood usage by Arden Farms and its customers for many months, the only reasonable inference is that it was not defective when Owens-Illinois delivered it to Arden Farms. The nonsuit in favor of Owens-Illinois was therefore proper under any theory of liability. I would therefore affirm

the judgment as to defendant Owens-Illinois and reverse it as to defendant Arden Farms.

GIBSON, C. J., Concurring and Dissenting.—It is clear that, as to Owens, the judgment of nonsuit should be affirmed. The parties stipulated that plaintiff had no cause of action against Owens for breach of warranty, and she failed to make a prima facie case against this defendant based on negligence. Although there is substantial evidence that the breaking of the bottle resulted from a defect in it, there is no evidence from which it can be inferred that this defect was present when the bottle was delivered by Owens to Arden, who thereafter used it for several months before it broke.

With respect to Arden, however, I am of the view that the judgment of nonsuit should be reversed, because the evidence is not insufficient as a matter of law to sustain plaintiff's cause of action for breach of warranty. As shown by the discussion in the concurring and dissenting opinions of Justices Carter and Traynor, there is testimony from which the jury could reasonably infer that the bottle was not improperly handled in plaintiff's home and that when the bottle was delivered by Arden it contained a defect which caused it to break. If an inference to that effect were drawn by the jury, the defect in the bottle would constitute a breach of warranty by Arden under section 1735 of the Civil Code (Uniform Sales Act, § 15), which reads in part: "Subject to the provisions of this act and of any statute in that behalf, there is no implied warranty or condition as to the quality or fitness for any particular purpose of goods supplied under a contract to sell or a sale, *except as follows*: (1) Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be reasonably fit for such purpose. (2) Where the goods are bought by description from a seller who deals in goods of that description (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be of merchantable quality." (Italics added.)

Section 1735 does not refer merely to goods sold but to all "goods supplied under a contract to sell or a sale." It has been held that when bottled beverages are sold, the bottles in which they necessarily must be delivered are *supplied under the contract of sale* within the meaning of the statute

although the bottles are bailed rather than sold. (*Geddling* v. *Marsh* (1920), 1 K.B. 668; see 1 Williston on Sales (rev. ed. 1948), 582, n. 1.) The Geddling case related to a sale of "lime juice and soda" in bailed bottles and was decided under section 14 of the English Sale of Goods Act, 1893, which contains provisions nearly identical with those quoted above from section 1735. The findings in that case showed that the sale came within the first subdivision of the section, but the reasoning of the court is equally applicable to a sale coming within the second subdivision. Accordingly, even if we assume that the bottle involved here was bailed, it would be subject to any warranty which would be applicable under either of the quoted subdivisions if the bottle had been sold.

The sale of a bottle of milk by a dairy under the circumstances appearing here clearly comes within the language of the second subdivision of the statute, and the seller's implied warranty of merchantable quality under this provision includes a warranty that his product is reasonably fit for the general purpose for which goods of that kind are sold. (See *Simmons* v. *Rhodes & Jamieson, Ltd.*, 46 Cal.2d 190, 194 [293 P.2d 26] ; *Burr* v. *Sherwin Williams Co.*, 42 Cal.2d 682, 694 [268 P.2d 1041].) It is obvious that a milk bottle which is so defective that it will break under normal handling is not fit for the ordinary use for which it was intended and that the delivery of such a defective bottle constitutes a breach of warranty.

The buyer may recover for breach of the statutory warranty without proving negligence on the part of the seller. (*Tremeroli* v. *Austin Trailer Equip. Co.*, 102 Cal.App.2d 464, 475 [227 P.2d 923] ; *Vaccarezza* v. *Sanguinetti*, 71 Cal.App.2d 687, 689 [163 P.2d 470] ; 1 Williston on Sales (rev. ed. 1948), 617.) Accordingly, it is not necessary to consider in this dissent whether the evidence is sufficient to support a judgment upon the theory that Arden was negligent. Likewise it is not necessary to discuss whether our decision in *Honea* v. *City Dairy, Inc.*, 22 Cal.2d 614 [140 P.2d 369], precludes resort to the doctrine of res ipsa loquitur under the evidence presented here.

I would affirm the judgment with respect to Owens and reverse it with respect to Arden.

Appellant's petition for a rehearing was denied May 21, 1958. Gibson, C. J., Carter, J., and Traynor, J., were of the opinion that the petition should be granted.